**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Civil Division)**

_____

|  |  |  |
|---|---|---|
| **SAIRA GHUMMAN**, | ) | |
| 1331 Maryland Avenue SW, Apt #435 | ) | |
| Washington, DC 20024 | ) | |
|  | ) | |
| Plaintiff, | ) | Civil Action No. |
|  | ) | |
| v. | ) | **COMPLAINT &** |
|  | ) | **JURY DEMAND** |
| **BOEING INTELLIGENCE &** | ) | |
| **ANALYTICS, INC.** | ) | |
| 131 National Business Parkway, Suite 120 | ) | |
| Annapolis Junction, MD 20701 | ) | |
|  | ) | |
| **THE BOEING COMPANY** | ) | |
| 929 Long Bridge Drive | ) | |
| Arlington, VA 22202 | ) | |
|  | ) | |
| Defendant. | ) | |

_____)

## COMPLAINT

COMES NOW Plaintiff, Saira Ghumman (hereinafter "Plaintiff" or "Ms. Ghumman"), by and through her undersigned counsel, for her complaint states as follows:

## <u>NATURE OF THE CASE</u>

1.    Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. for the Defendants' unlawful discrimination based on race (Asian), color (Brown) and protected activity; hostile work environment harassment; and constructive discharge as set forth below.

///

///

///

1

## PARTIES

2.      Plaintiff is currently domiciled in Washington, D.C.  Plaintiff is a resident of the District of Columbia and is a United States citizen.  Plaintiff was an employee of Boeing Intelligence & Analytics, Inc. at all relevant times at the Annapolis, MD headquarters.

3.      Defendant Boeing Intelligence & Analytics, Inc. (BI&A) is a Boeing company that provides App Development & Count Transition/Migration, Data Management & Software Engineering, Geospatial Production & Services, Analytics & Data Science, and Cyber & Insider Thread Operations, headquartered in Annapolis Junction, MD and has locations in Alabama, Missouri, Virginia, Maryland, and New Jersey[1].

4.      The Boeing Company develops, manufactures, and service commercial airplanes, defense products, and space systems for customer in more than one hundred-fifty (150) countries, headquartered in Arlington, Virginia. [2]

## JURISDICTION

5.      This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII.

6.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

///

///

///

---

[1] About Boeing Intelligence & Analytics, https://www.bia-boeing.com/about-bia (last visited November 20, 2023)
[2] Boeing in Brief, https://www.boeing.com/company/general-info/index.page#/overview (last visited November 20, 2023)

**VENUE**

7.      Venue is appropriate in this District and based on the fact that Defendants have a place of business in this District, the acts events and/or omissions giving rise to Plaintiff's claims as described herein occurred in this District, and the office Plaintiff worked out of giving rise to Plaintiff's claims as described herein occurred in this District. 28 U.S.C. § 1391.

8.      The amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand ($75,000) dollars.

**EXHAUSTION OF REMEDIES**

9.      Plaintiff has exhausted her administrative remedies as follows:

10.     On January 27, 2023, Plaintiff filed a Charge of Discrimination with the Maryland Commission on Civil Rights ("MCCR").

11.     On September 13, 2023, the EEOC issued the Determination and Notice of Rights to Plaintiff.

12.     This timely filed civil complaint alleging discrimination based on race, color, and retaliation; hostile work environment harassment; and constructive discharge follows.

**FACTS**

13.     At all times relevant to the claims made herein, Plaintiff was an employee of BI&A in Annapolis Junction, MD.

14.     At all times relevant to the claims made herein, Joseph Balsamo, Director of Contracts was Plaintiff's direct supervisor.

15.     On July 7, 2016, Plaintiff was hired by BI&A as a Level 3 Contracts and Pricing professional.

3

16.     Plaintiff accepted BI&A's employment offer although she had two (2) other offers, which provided higher salaries; however, she was advised that BI&A's raise and bonus structure would allow her to make the same salary or more within six (6) months.

17.     Plaintiff was also advised that in addition to working in the Maryland office, she would be in a Virginia office supporting part-time, which would have been beneficial to Plaintiff's personal and family obligations.

18.      Plaintiff did not support the Virginia office until six (6) months after her start and was only allowed to commute one (1) day a week for a brief period of time.

19.     While other employees were immediately extended the opportunity to telework without a telework agreement, Plaintiff was routinely asked questions about her time and attendance.

20.     During the relevant time period, following Plaintiff's first six (6) months with the company, her  telework agreement was revised multiple times and clauses such as core office hours when being a caretaker were added to target Plaintiff, who Mr. Balsamo knew as a caregiver for her mother.

21.     During the relevant time period, Plaintiff was routinely asked to submit her timecard prior to the payroll due date.

22.     During the relevant time period, Plaintiff's timecard was rarely late, but she was constantly reminded by Mr. Balsamo to submit her timecard so he could review her work and performance against the hours recorded.

23.     Mr. Balsamo did not screen the work and time entries of junior employees, but screened Plaintiff who was a senior employee.

24.    During the relevant time period, Plaintiff was pressured to produce more content for compliance and take on full responsibility of managerial functions, including completing the work of others.

25.    During the relevant time period, Plaintiff was closely monitored by Mr. Balsamo or his designee.

26.    When Plaintiff worked remotely, Mr. Balsamo sent her an excessive number of emails and Plaintiff could see Information Technology ("IT") access her computer while working without notice or permission.

27.    During the relevant time period, Mr. Balsamo would interrupt conversations when Plaintiff's office door was closed to demand a status update on random programs or make unreasonable requests that did not align with government contractor best practices.

28.    On one occasion while Plaintiff was in a closed-door meeting, Mr. Balsamo called and texted her serval times, knocked loudly on her door, rattled the doorknob, and demanded to be let into Plaintiff's office.

29.    During the relevant time period, Mr. Balsamo would follow Plaintiff around the office and stand outside the office of staff speaking with Plaintiff to eavesdrop on conversations.

30.    During the relevant time period, Mr. Balsamo would take credit for Plaintiff's work and never included her accomplishments during weekly and monthly reportings to the company and upper management.

31.    In late 2016 through early 2017, Mr. Balsamo pretended to throw fruit at Plaintiff and teased her about her car problems by posting pictures of destroyed cars in her office.

32.    On March 1, 2017, she was promoted to a Level 4 Contracts and Pricing professional.

33.    Rita McMullen, then Chief Executive Officer, recommended Plaintiff for the position, which Mr. Balsamo objected to the promotion.

34.    When Plaintiff was notified of her promotion, Mr. Balsamo was confrontational and set unreasonable and illogical expectations about contracts, awards, and timekeeping.

35.    From notice of the promotion through Plaintiff's forced resignation, Mr. Balsamo acted like he was personally responsible for granting Plaintiff the promotional opportunity and weaponized the promotion during interactions with Plaintiff.

36.    Plaintiff was paid less than her predecessor, Sharon Fava (Caucasian, White).

37.    On June 1, 2019, her position was reclassified as a Contract Management Specialist – Level 4.

38.    Mr. Balsamo created organizational charts placing Plaintiff under her peer, Sandra Dericott, and distributed the chart internally although no such organizational structure existed and he had no authority to create or distribute such a chart.

39.    During the relevant time period, Mr. Balsamo discussed Plaintiff's personal life and work performance with other employees and asked Ms. Dericott to watch Plaintiff.

40.    From December 2017 through July 2018, Plaintiff completed the assigned work for Suzette James (African American, Black), while Mr. Balsamo approved Ms. James' inflated timecard, allowed her to immediately work remotely, and made excuses for her non-performance.

41.    During this time, Ms. James was never asked by Mr. Balsamo to execute a telework agreement, nor was she asked to wait for six (6) months before working remotely.

42.    During this time, Mr. Balsamo signed Ms. James' timecard, which often included overtime hours without comparing her production to her hours submitted.

43.     During this time, Ms. James did not produce any work product, was unreachable while working remote, and was out of the office for long periods of time when she was scheduled to work in-person.

44.     Around October 2018, after Ms. James' termination, Mr. Balsamo told Plaintiff her own performance would be heavily measured by her ability to complete Ms. James' remaining incomplete work and bring it up to compliance acceptable levels before reassigning it to Ms. James' replacement.

45.     In 2019, Plaintiff told Mr. Balsamo that she was unable to train new employees, she was issued a written reprimand from Shirl Jenkins, Human Resources Director, for not being a team player.

46.     In February 2019, Mr. Balsamo created fictitious timecard audit requirements to intimidate and bully Plaintiff.

47.     Plaintiff asked Ms. Jenkins and Sean Gildea, Chief Financial Officer, for a copy of the audit requirements, but they were never provided.

## Denial of Promotional Opportunity

48.     In late 2020, Ms. Dericott resigned from BI&A and a Level 5 Contracts Manager position became available.

49.     Plaintiff and other employees were told the position would only be a replacement position for a Level 4 Contracts Manager.

50.     Plaintiff met and exceeded the requirement to be promoted to a Level 5.

51.     On multiple dates before and after Ms. Dericott's resignation, Plaintiff requested to be promoted based on her performance and deliverables; however, credit was given to others for the results she was solely responsible for.

52.    When Plaintiff asked about promoting her to Level 5, Mr. Balsamo told there was not a budget to hire a Level 5, that she did not deserve it, and that she did not show him enough appreciation.

53.    Around October or November 2020, following Ms. Dericott's resignation, Susan Wooldridge (Caucasian, White) was hired as a Level 5 Contracts Manager.

54.    Upon information and belief, the Level 5 position was created for Ms. Wooldridge, who was a long-time, personal friend of Mr. Balsamo (Caucasian, White).

55.    During the relevant time period, Plaintiff maintained a dule role of Contracts Manager and Supplier Compliance/Governance, in addition to performing all procurement activities for her own programs.

56.    Internal stakeholders consistently praised Plaintiff's work ethic and performance.

57.    In 2022, Plaintiff supported both contract and subcontract functions for BI&A's biggest contract award.

58.    During the relevant time period, Plaintiff had the highest workload due to her support of both pre-award and post-award activities for contract and procurement functions.

59.    During the relevant time period, Plaintiff supported all government agencies except for one that was assigned to Ms. Wooldridge and her predecessor.

60.    Plaintiff's procurement activity and subcontractors were higher in number and complexity than the few programs Ms. Wooldridge support.

61.    Plaintiff and her program team made multiple requests for augmentation due to Plaintiff's workload.

62.    During the relevant time period, Plaintiff met all contractual deadlines without assistance.

63.     During the relevant time period, Mr. Balsamo made demands of Plaintiff to do more supplier auditing functions, training, and mentoring of less experienced employees.

64.     Although Plaintiff had the higher workload, new procurement employees were immediately directed to support the two (2) contracts Ms. Woolridge managed and other indirect activities Mr. Balsamo wanted to unload from his own portfolio.

65.     Ms. Wooldridge struggled to complete her timecard for months, was unavailable for contractual deadlines, was hard to reach for long periods of time missing submission deadlines for contract deliverables, and did not complete contractual actions that were assigned to both her and Plaintiff.

66.     While Plaintiff was constantly confronted by Mr. Balsamo for status updates, Ms. Woolridge was often confused and detached.

67.     During the relevant time period, Mr. Balsamo used meetings with Plaintiff to get guidance for managing his procurement team.

68.     Although Mr. Balsamo was Plaintiff's supervisor, he appeared to have no knowledge of compliance related to government supplier management.

## Reports of Harassment and Discrimination

69.     On multiple occasions during the relevant time period, Plaintiff emailed Ms. Jenkins and Sean Gildea, Chief Financial Officer, to report Mr. Balsamo's harassment.

70.     On multiple occasions during the relevant time period, Plaintiff regularly discussed Mr. Balsamo's behavior and his harassment during the monthly Self Governance/Supplier Compliance meetings.

71.     On October 10, 2018, Plaintiff requested a meeting with Mr. Gildea and Mr. Balsamo to outline priorities and her role and responsibilities.

72.    During this meeting, Plaintiff reiterated that she needed to address proposals first then prime/subcontract actions and compliance as time allows; however, she did not report to Mr. Balsamo for subcontract compliance.

73.    Prior to this October 2018 meeting, Ms. Jenkins advised Mr. Balsamo that Plaintiff completed her compliance duties by delivering policy and procedure documents, including compliance check lists for each contract award type for both government and commercial agreements.

74.    On December 14, 2018, Plaintiff emailed Mr. Gildea and Mr. Balsamo to request her position description.

75.    On February 7, 2019, Plaintiff reported to Ms. Jenkins that Mr. Balsamo was harassing her about her timecard and making up requirements to decrease her reported time.

76.    On June 3, 2019, Plaintiff was advised that Mr. Gildea, Ms. Jenkins, Robin Kish (Boeing Corporate), and Mary Howell (Boeing Corporate) would mediate her concerns through a team building exercise.

77.    Plaintiff was out of the office due to a family emergency during the team building exercise and when Plaintiff followed up with Ms. Jenkins to check the status of her complaints about Mr. Balsamo, she did not receive a response.

78.    On March 10, 2020, Plaintiff asked Mr. Balsamo if he required other employees to comply with extra requirements while working remotely and copied Mr. Gildea and Ms. Jenkins.

79.    On April 3, 2020, Plaintiff asked Ms. Jenkins for an update about her reports of harassment and discrimination from Mr. Balsamo, but Ms. Jenkins advised that she would not discuss what actions were taken.

80.    When Plaintiff was on leave for a medical procedure, Mr. Balsamo sent her an unbelievable number of emails, which she forwarded to Mr. Gildea.

81.    On October 30, 2020, Plaintiff emailed Mr. Gildea and Ms. Jenkins to request assistance with her work distribution because was performing three (3) different functions without help and Plaintiff was told to discuss the matter with Mr. Balsamo, who created the problem.

82.    On February 19, 2021, Plaintiff emailed Mr. Gildea, Ms. Jenkins, and Mr. Balsamo requesting that her work be redistributed and to ask why she was supporting every proposal submitted by BI&A, but did not receive a response.

83.    On September 16, 2021, Plaintiff copied the new Chief Financial Officer, Patrick Shaffer, on her responses to emails from Mr. Balsamo asking her to perform functions outside of her job description.

84.    On April 21, 2022, Plaintiff asked Mr. Shaffer why she received a lower cost-of-living adjustment ("COLA") increase than her peers and was told to her mind her business.

85.    Mr. Shaffer also told Plaintiff that he was putting a tick mark on his notebook every time she mentioned Mr. Balsamo and so far from September 2021 through April 2022, she had seven (7).

86.    Mr. Shaffer, who Plaintiff reported Mr. Balsamo's discrimination and harassment to, told her he only saw a personality difference and Plaintiff was looking for attention.

## Constructive Discharge

87.    On May 4, 2022, after years of harassment and discrimination with corrective action, Plaintiff had no choice, but to resign from BI&A.

///

///

## CAUSES OF ACTION

## COUNT ONE

### Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.
### (Race Discrimination)

88.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

89.    42 U.S.C. § 2000e-2 makes it unlawful for an employer to fail or refuse to hire, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment on the basis of such individual's race.

90.    Plaintiff is a member of a class protected under by virtue of her race (Asian).

91.    As entities formed and doing business within the jurisdiction of the United States, Defendants must abide by 42 U.S.C. § 2000e-2.

92.    Other employees of Defendants, and who are individuals who are not Asian were treated more favorably than Plaintiff by Defendants.

93.    The individual(s) immediately allowed to work remotely were not Asian.

94.    The individual(s) who were promoted were not Asian.

95.    The individual(s) who submitted their timecards without constant reminders and scrutiny were not Asian.

96.    The individual(s) with a lighter workload were not Asian.

97.    The individual(s) who were assigned employee support for their programs were not Asian.

98.    The individuals who received a COLA increase were not Asian.

99.    The foregoing actions by Defendants constitute discrimination on the bases of race, which have infringed upon Plaintiff's right to enjoy the terms, conditions, and privileges of

employment and be provided the opportunity for advancement in her career, in violation of 42 U.S.C. § 2000e-2.

100.    Defendants are directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

101.    As a result of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Award punitive damages;

c.    Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendants unlawful conduct;

d.    Award any out-of-pocket expenses incurred as a result of Defendants unlawful conduct;

e.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

f.    Award equitable, declaratory, and injunctive relief; and

g.    Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.**
**(Color Discrimination)**

102.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

103.    42 U.S.C. § 2000e-2 makes it unlawful for an employer to fail or refuse to hire, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment on the basis of such individual's color.

104.    Plaintiff is a member of a class protected under by virtue of her color (Brown).

105.    As entities formed and doing business within the jurisdiction of the United States, Defendants must abide by 42 U.S.C. § 2000e-2.

106.    Other employees of Defendants, and who are individuals who are not Brown were treated more favorably than Plaintiff by Defendants.

107.    The individual(s) immediately allowed to work remotely were not Brown.

108.    The individual(s) who were promoted were not Brown.

109.    The individual(s) who submitted their timecards without constant reminders and scrutiny were not Brown.

110.    The individual(s) with a lighter workload were not Brown.

111.    The individual(s) who were assigned employee support for their programs were not Brown.

112.    The individuals who received a COLA increase were not Brown.

113.    The foregoing actions by Defendants constitute discrimination on the bases of color, which have infringed upon Plaintiff's right to enjoy the terms, conditions, and privileges of

employment and be provided the opportunity for advancement in her career, in violation of 42 U.S.C. § 2000e-2.

114.    Defendants are directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

115.    As a result of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Award punitive damages;

c.    Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendants unlawful conduct;

d.    Award any out-of-pocket expenses incurred as a result of Defendants unlawful conduct;

e.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

f.    Award equitable, declaratory, and injunctive relief; and

g.    Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.**
**(Retaliation)**

107.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

108.    Plaintiff regularly complained to the Director of Human Resources and the Chief Financial Officer, who supervised her supervisor, regarding the discriminatory and retaliatory treatment and hostile work environment that she was experiencing.

109.    Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

110.    Defendants subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Mr. Balsamo in violation of Title VII.

111.    Defendants, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when Plaintiff reported the discrimination and harassment and opposed it.

112.    The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

113.    Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward Plaintiff.

114.    Plaintiff's prior protected activity was a motivating factor in Defendants' unlawful conduct toward Plaintiff.

115.    Similarly-situated employees (no known prior EEO activity) were not subjected to the same, similar or any adverse treatment.

116.    The adverse treatment that Plaintiff was being subjected to by Defendants was obvious to her co-workers who could and did observe the distress that the treatment caused Plaintiff.

117.    Defendants unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

118.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

119.    Defendants unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

120.    Defendants retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendants discriminatory conduct.

121.    Defendants are directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

122.    As a direct and proximate cause of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Award punitive damages;

c.    Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendants unlawful conduct;

d.    Award any out-of-pocket expenses incurred as a result of Defendants unlawful conduct;

e.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

f.    Award equitable, declaratory, and injunctive relief; and

g.    Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FOUR

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.
(Hostile Work Environment)**

123.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

124.    As a result of Plaintiff's protected status (Asian, Brown) and participation in protected activity, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

125.    Plaintiff was regularly and continually subjected to harassing conduct as alleged throughout this Complaint, which created a hostile and abusive work environment.

126.    Plaintiff believes that she was subjected to a hostile work environment based on her race (Asian), color (Brown), and her protected activity.

127.    Defendants' unlawful conduct was unwelcome.

18

128.     Defendants' deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

129.     Plaintiff was subjected to harassment because of her race (Asian), color (Brown) and her protected activity, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

130.     Defendants knew or should have known of the harassment.

131.     Defendants failed to adequately investigate the harassment and took no effective, immediate or remedial action.

132.     Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

133.     By failing to take appropriate and effective remedial action against Plaintiff's supervisor, Defendants acted with malice or with reckless or callous indifference to Plaintiff's complaints.

134.     Defendants are directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

135.     As a direct and proximate cause of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.     Award compensatory damages;

b.  Award punitive damages;

c.  Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendants unlawful conduct;

d.  Award any out-of-pocket expenses incurred as a result of Defendants unlawful conduct;

e.  Award reasonable attorneys' fees, costs, and expenses incurred for this action;

f.  Award equitable, declaratory, and injunctive relief; and

g.  Award such other and further relief as this Honorable Court deems just and proper.

## <u>COUNT FIVE</u>

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.**
**(Constructive Discharge)**

136.  Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

137.  Defendants deliberately and intentionally created a work environment that was hostile to Plaintiff because of her race, color, and protected activity.

138.  Defendants' aforementioned deliberate and unlawful discriminatory and retaliatory conduct, which includes, but is not limited to denying Plaintiff promotional opportunities, paying her less than her peers, intentionally overloading her with additional job duties and responsibilities, scrutinizing her timecard entries, denying her telework privileges, eavesdropping on her conversations with employees, disclosing her private and personal information to employees,

taking credit for her work, refusing to acknowledge her contributions, and failing to take corrective action despite her many reports of harassment and discrimination.

139.    Plaintiff did not leave her employment with the Defendants of her own accord.

140.    Under the working conditions mentioned in this Complaint that Plaintiff experienced, a reasonable person would have been compelled to resign.

141.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

142.    Defendants are directly liable for the discriminatory acts or omissions of its respective agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

136.    As a direct and proximate cause of Defendants conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Award punitive damages;

c.    Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits he would have received but for Defendants unlawful conduct;

d.    Award any out-of-pocket expenses incurred as a result of Defendants unlawful conduct;

e.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

f.    Award equitable, declaratory, and injunctive relief; and

g.    Award such other and further relief as this Honorable Court deems just and proper.

Dated: December 12, 2023                    Respectfully submitted,

                            By:

                                */s/ Stephanie Rapp-Tully*
                                Stephanie Rapp-Tully, Esq.
                                Bar No. 18555
                                Tully Rinckey, PLLC
                                2001 L Street NW, Suite 902
                                Washington, DC 20036
                                (202) 787-1900
                                srapptully@fedattorney.com

                                *Counsel for Plaintiff*