## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SAIRA GHUMMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-23-3371 |
| | * | |
| BOEING INTELLIGENCE & | * | |
| ANALYTICS, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

Saira Ghumman ("Plaintiff") filed this action against Boeing Intelligence & Analytics, Inc. ("BI&A") and The Boeing Company ("Boeing") (collectively, "Defendants"), alleging employment discrimination claims. ECF 1. Defendants filed a motion to dismiss the Complaint, ECF 6, Plaintiff opposed the motion, ECF 8, and Defendants filed a reply, ECF 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion to dismiss will be GRANTED, and the Complaint will be dismissed without prejudice.

### I.     FACTUAL BACKGROUND

The facts described herein are derived from Plaintiff's Complaint and are taken as true for purposes of this motion. Boeing "develops, manufactures, and service[s] commercial airplanes, defense products, and space systems." ECF 1 ¶ 4. BI&A "is a Boeing company" that provides related services. *Id.* ¶ 3. "Plaintiff was an employee of [BI&A] at all relevant times at the Annapolis, MD headquarters." *Id.* ¶ 2.

Plaintiff, who identifies her race as Asian and her color as Brown, began working for BI&A as a Level 3 Contracts and Pricing professional in July, 2016. *Id.* ¶¶ 15, 90, 104. Her direct supervisor, Joseph Balsamo, engaged in conduct that Plaintiff did not like, including reminding

her to submit her timecard, screening her work and time entries more intensely than those of other employees, closely monitoring her, sending "an excessive number of emails," interrupting conversations, making "unreasonable requests that did not align with government contractor best practices," following Plaintiff around and eavesdropping on her, and taking credit for Plaintiff's work, in addition to "pretend[ing] to throw fruit at Plaintiff" and "teas[ing] her about her car problems by posting pictures of destroyed cars in her office." *Id.* ¶¶ 14, 22–31. Plaintiff received a promotion to a Level 4 Contracts and Pricing professional in March, 2017. *Id.* ¶ 32. Despite having objected to her promotion, Mr. Balsamo "acted like he was personally responsible for granting Plaintiff the promotional opportunity." *Id.* ¶ 35.

In late 2020, BI&A hired a Level 5 contracts manager, who was a White friend of Mr. Balsamo's, instead of promoting Plaintiff. *Id.* ¶¶ 52–54. Plaintiff performed more work than that Level 5 manager while having less support. *Id.* ¶¶ 59–66. Over the years, Plaintiff emailed her higher level supervisors, Mr. Gildea, Ms. Jenkins, and Patrick Shaffer, on many occasions to report Balsamo's "harassment," *id.* ¶¶ 69–70, and to complain about her excessive work duties and unfair assignments, *id.* ¶¶ 81–83. "On June 3, 2019, Plaintiff was advised that Mr. Gildea, Ms. Jenkins, Robin Kish (Boeing Corporate), and Mary Howell (Boeing Corporate) would mediate her concerns through a team building exercise." *Id.* ¶ 76. However, Plaintiff missed the exercise due to a family emergency. *Id.* ¶ 77. "On April 21, 2022, Plaintiff asked Mr. Shaffer why she received a lower cost-of-living adjustment ('COLA') increase than her peers and was told to mind her business." *Id.* ¶ 84. Mr. Shaffer opined that Plaintiff's issues with Mr. Balsamo constituted a "personality difference." *Id.* ¶ 86.  Plaintiff resigned her employment with BI&A on May 4, 2022, "after years of harassment and discrimination." *Id.* ¶ 87.

## II.      LEGAL STANDARDS

Under Rule 12(b)(6), a defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken

as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.   ANALYSIS

### A. Boeing

Initially, Plaintiff's Complaint fails to state a claim against Boeing. Plaintiff's sole allegations in the Complaint regarding Boeing, other than a brief description of its business, ECF 1 ¶ 4, are (1) that her former employer, BI&A, is a "Boeing company," *id.* ¶ 3, and (2) a hearsay statement that Plaintiff "was advised" by an unknown person that two Boeing Corporate employees would assist in a mediation exercise that Plaintiff did not even attend, *id.* ¶ 76. Those sparse facts do not suffice to state a plausible claim against Boeing, either on their own or under a theory of joint employment or integrated enterprise. All claims against Boeing must therefore be dismissed.

**B. BI&A**

**i.   Race and Color Discrimination (Counts One and Two)**

With respect to her discrimination claims, Plaintiff presents no direct evidence of discrimination, such as her employer making express reference to her race or color in connection with some adverse action. Therefore, to prove her discrimination claims, she must proceed under the well-established *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The elements require that Plaintiff show that: "(1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Sempowich v. Tactile Sys. Tech., Inc*., 19 F.4th 643, 649–50 (4th Cir. 2021) (citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). While Plaintiff need not plead a prima facie case to survive a motion to dismiss, she must at least plead facts which plausibly state a discrimination claim. *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 510–12 (2002).

Here, Plaintiff has not done so. BI&A correctly notes, and Plaintiff does not contest, that she first initiated EEO contact on January 27, 2023. *See* ECF ¶ 10; ECF 6-2. In Maryland, which is a deferral state, Title VII requires that a plaintiff "file a 'charge' of discrimination with the EEOC or an appropriate state or local agency" within 300 days of when "the alleged unlawful employment practice occurred." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 777 (D. Md. 2020) (quoting 42 U.S.C. § 2000e-5(e)(1)) (other citations omitted). Thus, Plaintiff could only timely complain of discriminatory acts occurring on or after April 2, 2022. Plaintiff's argument about the "continuing violation doctrine" is unavailing because she simply has not pled any ongoing pattern of discrimination and that doctrine only applies to hostile work environment

claims. *See Angelini*, 464 F. Supp. 3d 756 at 789 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002)). Her Complaint at present consists of a vague, disjointed list of grievances occurring in isolation over many years (or at unspecified times), with no clear connection to her race or color. And she has alleged no specific actions taken by her employer after April 2, 2022. The only events alleged to have occurred after that date are (1) a question she posed to her supervisor on April 21, 2022, about a COLA increase that occurred at an unspecified time, and (2) her own resignation. ECF 1 ¶¶ 84–87. At present, then, her Complaint contains no allegations setting forth a plausible, timely claim of Title VII discrimination and those counts must be dismissed.

### ii.   Retaliation (Count Three)

Count Three alleges retaliation. Plaintiff has not alleged any facts suggesting direct evidence of retaliation, such as statements made regarding an intent to retaliate for her various complaints and charges. Instead, she suggests that BI&A's retaliatory intent can be inferred from its pattern of conduct. Title VII retaliation can be established by direct or indirect evidence of retaliatory animus, or by the *McDonnell Douglas* framework. *See Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). While a plaintiff need not allege a prima facie case of retaliation, the standards for such a case are useful in assessing whether Plaintiff has alleged a viable, plausible claim.

The elements of a Title VII retaliation claim require, in relevant part, that the employee must have taken protected action to oppose an unlawful employment practice by the employer. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (noting that the oppositional activity must be directed at "an unlawful employment practice" or an employment action that she

"reasonably believes to be unlawful"). In other words, the plaintiff must have complained about an action that actually discriminated on the basis of a protected class and thus violated Title VII, or at least one that she reasonably believed to be unlawful. Here, Plaintiff has not alleged that her multitude of reports of "harassment" or "discrimination" to her higher level supervisors ever referenced discrimination on the basis of her race or color. Without such allegations, Plaintiff at present has not alleged any protected actions that could form the basis for her retaliation claim. The precise nature of communications determines whether they constitute protected activity or not. *See, e.g.*, *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 180 n.2 (4th Cir. 2023) (noting, in the disability discrimination context, that "generalized health complaints, as opposed to a more formal request for an ADA accommodation, do not rise to the level of ADA-protected activity"). Mere complaints that a supervisor is "harassing" an employee or treating an employee unfairly do not implicate an unlawful employment practice. To state a plausible retaliation claim, then, Plaintiff would have to more specifically allege that she complained of a practice unlawful under Title VII and would have to allege some causally connected retaliatory action taken by her employer.[1] Her claim at present, which does neither of those things, must be dismissed.

### iii.   Hostile Work Environment (Count Four)

Plaintiff further alleges that BI&A subjected her to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal

---

[1] Plaintiff has also alleged insufficient facts to plausibly allege a causal connection between a protected activity and adverse action. Most notably, she has not alleged facts regarding when she "regularly discussed" her supervisor's behavior and harassment, when she received the lower COLA increase, or whether that COLA increase occurred because of her complaints. *See Gates v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 745–46 (D. Md. 2023).

citations and quotation marks omitted). To establish such a claim, "a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [race or color]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010)).

Plaintiff has failed to plead facts establishing the requisite severe and pervasive conduct based on her status in any protected class. She has not alleged that any race- or color-based comments were made to anyone at any time. She has not pleaded any other facts to plausibly suggest that the conflicts with her supervisor or discrepancies in her work assignments were based on her membership in a protected class. Simple mistreatment, unfair decision-making, or rude conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor" do not suffice. (internal citations and quotation marks omitted)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Absent any facts suggesting some connection to her race or color, unpleasant workplace interactions and even unfair treatment cannot alone support Plaintiff's hostile work environment claim. Moreover, the allegations in Plaintiff's Complaint suggest isolated incidents

occurring over a number of years, and not the type of severe and pervasive conduct that might constitute a hostile work environment, even had she alleged some connection to race or color.

### iv.    Constructive Discharge (Count Five)

Finally, Plaintiff alleges constructive discharge, which requires her to allege facts to plausibly establish that her "working conditions bec[a]me so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (internal citations omitted). In fact, for constructive discharge, an employee must show "something more" than the showing required for a hostile work environment claim. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) "Unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* (internal quotation marks and citation omitted). The Fourth Circuit has described the standard of "intolerability" as follows:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the subjective standard of whether a reasonable person in the employee's position would have felt compelled to resign, that is, whether he would have had no choice but to resign.

*Id.* (emphases omitted) (internal quotation marks and citation omitted). The Fourth Circuit went on to note: "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.*

Here, as noted above, Plaintiff has not even met the standard to allege an actionable hostile work environment claim. She has not linked any of her employer's conduct to her race or color and has not alleged with any specificity what actions occurred, particularly during the period approaching her resignation. The isolated incidents she has identified do not come close to a

plausible claim of intolerability required to sustain a constructive discharge claim. *See Goldsmith v. Mayor & City Council of Balt.*, 987 F.2d 1064, 1072 (4th Cir. 1993) (explaining that "isolated incidents" were not sufficient to support a claim of constructive discharge). Accordingly, that claim also will be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Complaint, ECF 6, is GRANTED, and Plaintiff's claims are dismissed without prejudice. A separate Order follows, which will afford Plaintiff thirty days to file a motion for leave to amend her claims, if desired.


Dated:  July 24, 2024                                    _____/s/_____
                                                         Stephanie A. Gallagher
                                                         United States District Judge