IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SAIRA GHUMMAN,** | * |
| Plaintiff, | * |
| v. | *   Civil Case No. SAG-23-3371 |
| **BOEING INTELLIGENCE & ANALYTICS, INC.,** *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

After a previous version of her complaint was dismissed without prejudice, Saira Ghumman ("Plaintiff") filed an Amended Complaint against her former employer, Boeing Intelligence & Analytics, Inc. ("BI&A"), alleging five employment-based claims. ECF 19. BI&A filed a motion to dismiss the Amended Complaint, ECF 20, Plaintiff opposed the motion, ECF 22, and BI&A filed a reply, ECF 23. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, BI&A's motion to dismiss will be granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

The facts described herein are derived from Plaintiff's Amended Complaint and are taken as true for purposes of this motion. Boeing "develops, manufactures, and service[s] commercial airplanes, defense products, and space systems." ECF 19 ¶ 4. BI&A "is a Boeing company" that provides related services. *Id.* ¶ 3. "Plaintiff was an employee of [BI&A] at all relevant times in the Annapolis, MD headquarters." *Id.* ¶ 2.

Plaintiff, who identifies her race as Asian and her color as Brown, began working for BI&A as a Level 3 Contracts and Pricing professional in July 2016. *Id.* ¶¶ 15, 98, 116. Her direct

1

supervisor, Joseph Balsamo, engaged in conduct that Plaintiff did not like, including reminding her to submit her timecard, screening her work and time entries more intensely than those of other employees, closely monitoring her while she teleworked, sending "an excessive number of emails," interrupting conversations, making "unreasonable requests that did not align with government contractor best practices," following Plaintiff around and eavesdropping on her, and taking credit for Plaintiff's work, in addition to "pretend[ing] to throw fruit at Plaintiff" and "teas[ing] her about her car problems by posting pictures of destroyed cars in her office." *Id.* ¶¶ 14, 20–31. Plaintiff received a promotion to a Level 4 Contracts and Pricing professional in March 2017. *Id.* ¶ 32. Despite having objected to her promotion, Mr. Balsamo "acted like he was personally responsible for granting Plaintiff the promotional opportunity." *Id.* ¶¶ 33, 35.

In late 2020, BI&A hired a Level 5 contracts manager, who was a White friend of Mr. Balsamo's, instead of promoting Plaintiff. *Id.* ¶¶ 53–56. Plaintiff had inquired about a promotion and been told there was not a budget to hire a Level 5 contracts manager. *Id.* ¶ 53. Plaintiff performed more work than that Level 5 manager while having less support. *Id.* ¶¶ 60–63. Over the years, Plaintiff emailed her higher-level supervisors, Mr. Gildea, Ms. Jenkins, and Patrick Shaffer, on many occasions to report Balsamo's "harassment," *id.* ¶¶ 75–76, and to complain about her excessive work duties and unfair assignments. *Id.* ¶¶ 87–91. "On June 3, 2019, Plaintiff was advised that Mr. Gildea, Ms. Jenkins, Robin Kish (Boeing Corporate), and Mary Howell (Boeing Corporate) would mediate her concerns through a team building exercise." *Id.* ¶ 82. However, Plaintiff missed the exercise due to a family emergency. *Id.* ¶ 83. Between "February 2022 and April 2022," Mr. Balsamo denied Plaintiff's request for a promotion and issued her an unfair performance review. *Id.* ¶¶ 73–74. "On April 21, 2022, Plaintiff asked Mr. Shaffer why she received a lower cost-of-living adjustment (COLA) increase than her peers and was told to mind

her business." *Id.* ¶ 92. Mr. Shaffer opined that Plaintiff's issues with Mr. Balsamo constituted a "personality difference." *Id.* ¶ 94. Plaintiff resigned her employment with BI&A on May 4, 2022, "after years of harassment and discrimination without corrective action." *Id.* ¶ 95.

## II. LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; see *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ..."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

3

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937 (2012).

III. **ANALYSIS**

   1. **Race and Color Discrimination (Counts One and Two)**

BI&A's primary argument regarding Plaintiff's discrimination and retaliation claims is that they are subject to dismissal because they are barred by limitations. As this Court explained in its earlier opinion, Plaintiff can only maintain claims for acts that occurred on or after April 2, 2022. ECF 10 at 5–6. While Plaintiff argues that the earlier incidents should be allowed because the

conduct continued, the continuing violation doctrine does not apply to Title VII discrimination claims and only permits hostile work environment claims to incorporate acts falling outside the statutory time period. *See Angelini v. Baltimore Police Dept.*, 464 F. Supp. 3d 756, 787–88 (D. Md. 2020) (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

This Court's ruling that any incident before April 2, 2022 cannot be the basis for Plaintiff's discrimination claims, though, does not dispose of Counts One and Two in their entireties. A limitations defense cannot ordinarily be considered in the context of a motion to dismiss. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). Only "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller*, 224 F. Supp. 2d at 985; *see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). While it is true that nearly all of the incidents Plaintiff described in her Amended Complaint occurred outside of the three-year limitations window, she has left (and added) some ambiguity about the dates that other incidents occurred. While this Court is loath to reward such intentional ambiguity by permitting the assertions to proceed to discovery, a plaintiff is not required to plead facts relevant to limitations in her complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 465–466 (4th Cir. 2007) ("While Goodman might ultimately have to prove when he discovered a breach, he was not obligated to plead discovery of the breach in his complaint when the affirmative defense had yet to be demonstrated in the complaint or asserted by the defendants.").

Thus, while there is a list of incidents that are clearly time-barred and cannot be pursued in this case (such as the 2019 organizational chart, the 2019 written reprimand, the 2019 timecard audit requirements, and the promotional decision in 2020, along with any other incidents occurring

prior to April 2, 2022), this Court cannot definitively determine from the language of the Amended Complaint that the denial of Plaintiff's other requests for promotion or the issuance of unfair performance reviews are time-barred. It would of course be ill-advised (as a waste of time and resources) for a litigant to pursue discovery as to claims she well knows to be time-barred. But with the unspecified and ambiguous time frames currently pled in the Amended Complaint, this Court simply cannot say that it appears on the face of the complaint that the limitations period has run in its entirety. Counts One and Two will therefore proceed to discovery, with the caution that attempts by Plaintiff to seek discovery on incidents clearly occurring before April 2, 2022 will be precluded by this Court.

### 2. Retaliation (Count Three)

Plaintiff's retaliation claim, in Count Three, continues to be deficient because she has not plausibly alleged that she engaged in protected activity (despite having the benefit of this Court's analysis from its earlier ruling before drafting and filing her Amended Complaint). The elements of a Title VII retaliation claim require, in relevant part, that the employee must have taken protected action to oppose an unlawful employment practice by the employer. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (noting that the oppositional activity must be directed at "an unlawful employment practice"). In other words, the plaintiff must have complained about an action that discriminated on the basis of a protected class and thus violated Title VII. In her Amended Complaint, Plaintiff still has not alleged that she referenced race or color in any of her reports of "harassment" or "discrimination" or "hostile work environment." The precise nature of communications determines whether they constitute protected activity or not. *See, e.g.*, *Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 180 n.2 (4th Cir. 2023) (noting, in the disability discrimination context, that "generalized health complaints, as opposed to a more

6

formal request for an ADA accommodation, do not rise to the level of ADA-protected activity"). Mere complaints that a supervisor is "harassing" an employee or treating an employee unfairly do not implicate an unlawful employment practice. To state a plausible retaliation claim, then, Plaintiff would have to more specifically allege that she complained of a discriminatory class-based practice unlawful under Title VII, and would have to allege some causally connected retaliatory action taken by her employer. Even in her Amended Complaint, Plaintiff has failed to meet that standard, and her retaliation claim must therefore be dismissed.

### 3. Hostile Work Environment (Count Four) and Constructive Discharge (Count Five)

The changes Plaintiff made in her Amended Complaint did nothing to correct the deficiencies in her claims for hostile work environment or constructive discharge. As set forth in this Court's earlier opinion, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish such a claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race or color]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted)).

Plaintiff still has failed to plead facts establishing the requisite severe and pervasive conduct based on her status in any protected class. She has not alleged that any race- or color-based comments were made to anyone at any time. She has not pleaded any other facts to plausibly

suggest that the conflicts with her supervisor or discrepancies in her work assignments were based on her membership in a protected class. Her conclusory assertion that her supervisor took action "based on his personal feelings surrounding Plaintiff's race and color," ECF 19 ¶ 54, is not premised on any supporting facts. Simple mistreatment, unfair decision-making, or rude conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor" do not suffice.) (internal citations and quotation marks omitted)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Absent any facts suggesting some connection between her supervisor's conduct and her race or color, unpleasant workplace interactions and even unfair treatment cannot alone support a hostile work environment claim. Finally, the allegations in Plaintiff's Amended Complaint still suggest isolated incidents occurring over a number of years, and not the type of severe and pervasive conduct that might constitute a hostile work environment, even had she alleged some plausible connection to her race or color.

Plaintiff's constructive discharge claim remains equally deficient, as it requires her to allege facts to plausibly establish that her "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citation omitted). In fact, for constructive discharge, an employee must show

"something more" than the showing required for a hostile work environment claim. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) ("'Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.'") *Id.* (citation omitted). The Fourth Circuit has described the standard of "intolerability" as follows:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the subjective standard of whether a reasonable person in the employee's position would have felt compelled to resign, that is, whether he would have had no choice but to resign.

*Id.* at 193 (citations omitted). The Fourth Circuit went on to note, "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.*

Here, as noted above, even with the changes in the Amended Complaint, Plaintiff still has not even met the standard to allege an actionable hostile work environment claim. She has not linked any of her employer's conduct to her race or color and has not alleged with any specificity what actions occurred, particularly during the time period approaching her resignation. The isolated incidents she has identified (occurring over many years) still do not come close to a plausible claim of intolerability required to sustain a constructive discharge claim. *See Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (explaining that "isolated incidents" were not sufficient to support a claim of constructive discharge). Accordingly, that claim also will be dismissed.

IV.     **CONCLUSION**

For the reasons set forth above, BI&A's Motion to Dismiss, ECF 20, will be GRANTED IN PART AND DENIED IN PART. The claims in Counts Three, Four, and Five will be dismissed

without leave to amend, but claims in Counts One and Two will proceed to discovery. A separate Order follows.

Dated:  January 16, 2025                              /s/
                                                            Stephanie A. Gallagher
                                                            United States District Judge