## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SAIRA GHUMMAN | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-23-03371 |
| v. | * | |
| | * | |
| BOEING INTELLIGENCE & | * | |
| ANALYTICS, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Saira Ghumman ("Plaintiff") has brought this action against her former employer, Boeing Intelligence & Analytics, Inc. ("BI&A"), asserting claims for race and color discrimination in violation of Title VII of the Civil Rights Act of 1964. This opinion addresses three motions pending before this Court. BI&A and Plaintiff have filed cross-motions for summary judgment, ECF 34, 35, 38, to which the parties have filed their respective opposition and replies. ECF 37, 43, 45. Plaintiff also filed a motion to strike in full the transcript of Plaintiff's deposition, on the basis that the deposition was taken in violation of the Federal Rules of Civil Procedure and Local Rules of this Court. ECF 36. BI&A opposed the motion, ECF 42, and Plaintiff filed a Reply. ECF 44. This Court has reviewed the filings and has determined that no hearing is necessary to resolve the motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, BI&A's motion for summary judgment will be granted, Plaintiff's motion to strike deposition transcript will be denied, Plaintiff's motion for summary judgment will be denied, and judgment will be entered in favor of BI&A.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed her original complaint with this Court on December 12, 2023, against both BI&A and The Boeing Company, alleging multiple employment discrimination claims, including counts of race and color discrimination, retaliation, hostile work environment, and constructive discharge, all pursuant to Title VII. ECF 1. In dismissing Plaintiff's original complaint but affording Plaintiff leave to amend, this Court noted that because Plaintiff "first initiated EEO contact on January 27, 2023," she could only timely complain of discriminatory acts occurring on or after April 2, 2022 (300 days before that contact). ECF 10 at 5–6.[1]

Plaintiff filed the operative amended complaint with this Court on September 23, 2024, alleging the same five counts of employment discrimination. ECF 19. This Court again dismissed Plaintiff's claims against BI&A for retaliation, hostile work environment, and constructive discharge (and dismissed all claims against The Boeing Company). ECF 24 at 6–9; ECF 25. With respect to Plaintiff's claims against BI&A for race and color discrimination, however, while this Court noted Plaintiff's apparent "intentional ambiguity" in alleging the dates of certain incidents, it allowed these claims to proceed to discovery because it could not "definitively determine from the language of the amended complaint that the denial of Plaintiff's other requests for promotion or the issuance of unfair performance reviews are time-barred." ECF 24 at 5–6. This Court, however, cautioned that "attempts by Plaintiff to seek discovery on incidents clearly occurring before April 2, 2022 will be precluded by this Court." *Id.* at 6.

---

[1] For pincites, in all instances where an ECF header is affixed to the top of a page, this Court uses the ECF page number in that header; where such headers are *not* affixed, this Court uses the page numbers of the underlying document.

The parties engaged in discovery and have now filed cross-motions for summary judgment. BI&A submitted a "Statement of Undisputed Material Facts" in its motion for summary judgment,[2] ECF 35 at 2–15, to which Plaintiff responded to note certain disputes. ECF 37-2. The facts contained in the following section of this opinion are largely drawn from BI&A's submission (the "BI&A SUMF"). However, Plaintiff also submitted two different lists of additional facts—though drawn almost entirely from her amended complaint—that she asserted had been excluded from BI&A's motion, *see* ECF 37-1 at 2–3, or that BI&A had "conceded" as a result of what she argued was BI&A's deficient answer. ECF 38-1 at 11–12. BI&A responded only to the latter set of additional facts, which were largely redundant of the former. ECF 43-1. Certain of Plaintiff's additional facts are also incorporated into the below factual background, to the extent BI&A did not dispute them or they were supported by evidence separate from the amended complaint.

## II.    FACTUAL BACKGROUND

BI&A is a subsidiary of The Boeing Company, with its own corporate headquarters located in Annapolis Junction, MD. BI&A SUMF ¶ 2. Plaintiff, whose race is Asian and whose color is brown, ECF 43-1 at 1, was first hired at BI&A on the recommendation of Joseph Balsamo, as a "Level 3 Contracts and Pricing professional" in July, 2016. BI&A SUMF ¶ 23. In March, 2017, Plaintiff was promoted to a "Level 4 Contracts and Pricing professional" position which came to

---

[2] According to Plaintiff, "[p]ursuant to L.R. 105(2)(c), counsel for each party met and conferred on July 11, 2025, to determine the order in which the parties would file their respective Motions for Summary Judgment and subsequent Opposition. It was determined that Defendant would file first, on July 15, 2025 . . . ." ECF 38-1 at 4 n.1. It appears, however, as noted by BI&A, *see* ECF 42 at 5 n.2, that Plaintiff has separately violated Local Rule 105.2(c) by her having filed separate memoranda (1) in opposition to BI&A's motion for summary judgment and (2) in support of her own motion for summary judgment, where 105.2(c) expressly requires that after the initial summary judgment motion is filed, "the other party shall file a cross-motion accompanied by a *single* memorandum (both opposing the first party's motion and in support of its own cross-motion) . . . ." Loc. R. 105.2(c) (emphasis added).

be titled, "Contracts Management Specialist – Level 4." *Id.* ¶ 24; ECF 37-1 at 3. At all relevant times during Plaintiff's employment at BI&A, Mr. Balsamo was her direct supervisor and the Manager of BI&A's Contracts Department, reporting to Sean Gildea until around March 2021, when Patrick Shafer replaced Gildea as BI&A's CFO. BI&A SUMF ¶¶ 13, 23.

Among five employees who reported directly to Mr. Balsamo from January 1, 2021 through May 4, 2022 (the date of Plaintiff's resignation), the employee with the highest rank was Susan Woolridge, a "Contract Management Specialist – Level 5," who was hired at that level in July 2020 despite, as Plaintiff has asserted, the vacant position being originally advertised as a Level 4 position. *Id.* ¶¶ 14, 16; ECF 37-5, 37-6. Plaintiff did not apply for that position. BI&A SUMF ¶ 16. Ms. Woolridge's Level 5 position required a security clearance which Plaintiff lacked, BI&A SUMF ¶ 16; Plaintiff has asserted, in an "Affidavit" submitted with her summary judgment filings, that she did not believe such clearance was necessary because she was not assigned any contracts, nor were any Level 5 positions posted, which would have required it. ECF 45-1 ("Pl. Aff.") ¶¶ 21, 23. The security clearance held by Ms. Woolridge lent itself to both higher job levels and compensation. BI&A SUMF ¶ 16. At summary judgment, Plaintiff initially did not dispute that Ms. Woolridge had approximately 15 years more job-related experience than Plaintiff, *see* ECF 37-2 at 9; she subsequently disputed this point in her "Affidavit." *See* Pl. Aff. ¶¶ 16–19.

After Ms. Woolridge, Plaintiff was Balsamo's next-highest-ranked direct report, the only "Contract Management Specialist – Level 4" who reported to Balsamo from January 1, 2021 through her resignation. BI&A SUMF ¶ 15. Both Plaintiff and Woodridge were paid "near the mid-point" of the salary ranges for their respective levels. *Id.* ¶¶ 15–16.

Plaintiff has alleged a number of issues she had with Mr. Balsamo's management; the record reflects that she complained about Mr. Balsamo multiple times, including in October 2020

to Mr. Gildea, and in 2021, to Mr. Shafer. ECF 37-9; BI&A SUMF ¶ 30. Mr. Shafer offered input to both Plaintiff and Mr. Balsamo in response, and encouraged Plaintiff to contact BI&A's Human Resources department or Boeing's Ethics Team if she felt Mr. Balsamo was treating her unfairly. BI&A SUMF ¶¶ 4–5, 30. Plaintiff submitted internal complaints regarding Mr. Balsamo through BI&A's Ethics line in October, 2021 and April, 2022. ECF 37-12.

BI&A has provided eligible employees with cost-of living adjustments ("COLA") calculated as a percentage-based increase to an individual's base salary. BI&A SUMF ¶ 8. BI&A has aimed to achieve a mean yearly COLA increase of 3–3.5% for all employees. *Id.* ¶ 9. COLA increases include a performance component, applied uniformly regardless of manager, employee, job code, or skill code, whereby an individual's performance from the previous year (January 1 through December 31) is scored on a 50-point scale, with employees being assigned a score between 1 and 10 in each of the following categories: Job Knowledge, Initiative, Communication, Teamwork, and Corporate Citizenship. *Id.* ¶¶ 9, 11, 18. Those performance scores create the distribution curve for COLAs, with BI&A's raise pool then distributed across a set of neutral variables (e.g., employee locations, average market values, etc.). *Id.* ¶ 9. Because COLA increases are based on an employee's base salary, Employee A who receives a higher performance score than Employee B (who works in the same market/location) may consequently receive a higher *percentage* COLA than Employee B, but still receive a lower COLA in *total dollars* owing to Employee A having a lower base annual salary. *Id.* ¶ 10.

Mr. Balsamo conducted annual performance reviews for all his direct reports in the Contracts Department during the relevant period, without any input from Mr. Shafer. *Id.* ¶ 17. Mr. Balsamo's direct reports were given the option of submitting to him a self-assessment based on the same rubric, which Balsamo would review before assigning their performance scores. The one

time that Plaintiff exercised this option, to assess her 2020 performance, she gave herself a perfect score. *Id.* ¶ 18; Ex. B to ECF 35-5. At some point after December 31, 2021—neither party has offered a specific date—Mr. Balsamo issued Plaintiff a performance score of 37 for her 2021 performance evaluation, including a score of "8" for "Job Knowledge," with his other reports each receiving scores of "7" in this category. BI&A SUMF ¶ 37; Ex. A to ECF 35-5. Plaintiff's overall score was tied for the highest score among Mr. Balsamo's direct reports,[3] and resulted in Plaintiff receiving a COLA increase (the date of which, as discussed, *infra*, is not certain) of 2.88%—the highest percentage increase among Mr. Balsamo's direct reports (and higher than the 2.74% COLA increase Ms. Woolridge received). BI&A SUMF ¶ 37.

On April 2, 2022, Plaintiff was employed by BI&A as a Contracts Management Specialist – Level 4. ECF 43-1 at 2. Between April 2, 2022 and May 4, 2022, none of Mr. Balsamo's direct reports, including Plaintiff, received an "out-of-cycle" pay increase or promotion, and no "Contract Management Specialist – Level 5" positions were available or advertised, nor were any recommendations or hiring decisions made for such positions at BI&A. BI&A SUMF ¶¶ 20–22, 38–41.

 In April, 2022, Plaintiff advised Mr. Balsamo that she was considering resigning from BI&A to accept another position, unless BI&A increased her salary by $20,000. Mr. Shafer advised Mr. Balsamo, who in turn told Plaintiff, that BI&A could not provide such a raise at that time. Plaintiff subsequently advised that she would be resigning from BI&A on May 4, 2022. *Id.* ¶ 42; Ex. A to ECF 35-2. Plaintiff resigned from BI&A, effective May 4, 2022. BI&A SUMF ¶

---

[3] In assessing his direct reports' performance for 2021, specifically, Balsamo assigned scores ranging from 35 to 37 out of 50, falling within the range of scores (33 to 40 out of 50) he generally assigned most of his direct reports. BI&A SUMF ¶ 19; Ex. A to ECF 35-5.

34. At the time of her resignation, Plaintiff's annual salary was $117,224, with an additional $1,682.69 for overtime hours worked in 2022. *Id.* ¶ 29.

## III.    PLAINTIFF'S MOTION TO STRIKE DEPOSITION TRANSCRIPT

Alleging that BI&A has failed to comply with certain of this Court's rules pertaining to local and pro hac vice counsel, Plaintiff has moved to strike the transcript of her June 13, 2025 deposition conducted by BI&A's pro hac vice counsel. Because BI&A attached the transcript in support of its motion for summary judgment, this Court will first address Plaintiff's motion to strike.

Local Rule 101.1(b)(i) of the Local Rules of this Court provides that "[a]ny party represented by an attorney who has been admitted pro hac vice"—as Mr. William Ryan Waddell has been by this Court, ECF 7—"must also be represented by an attorney who is, and continuously remains, an active member in good standing of the Bar of this Court who shall sign all documents and, unless excused by the presiding judge, be present at any court proceedings." Plaintiff argues that her deposition constituted a "court proceeding," and asserts that because her deposition "was taken without local counsel of record present, or even any attorney actively admitted to the Bar for the District Court of Maryland," ECF 36 at 6, it was taken in violation of the Local Rule. On this premise, she argues that the entire transcript of her deposition must be stricken, pursuant to Federal Rule of Civil Procedure 11(a). ECF 36 at 1.

As a threshold matter, Rule 11(a) provides that the court must strike any "pleading, written motion, and other paper" not "signed by at least one attorney of record in the attorney's name . . . ."

Fed R. Civ. P. 11(a). Thus, Plaintiff's reliance on FRCP Rule 11(a) as the vehicle for her motion to strike her *deposition transcript* is misplaced.[4]

"[T]he only procedural rule addressing *motions* to strike" is FRCP 12(f), which "states that a court may, on its own or on a party's motion, 'strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *E.E.O.C. v. MVM, Inc.*, No. TDC-17-2881, 2018 WL 1882715, at *5 (D. Md. Apr. 19, 2018) (quoting Fed. R. Civ. P. 12(f)) (emphasis added). Because Rule 12(f) "does not address motions to strike matter containing [sic] in court filings other than pleadings," *id.*, the striking of such matter may only be achieved through the exercise of a court's "inherent authority to strike other documents." *Id.* (quoting *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015)); *see also Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10-cv-01265, 2011 WL 1584764, at *2–3 (S.D. W.Va. Apr. 26, 2011) (discussing different mentions of "striking" in the Federal Rules of Civil Procedure and concluding that none applied to objections to discovery requests; thus, the court had to decide whether to exercise its inherent power to strike); *Royles v. Trihealth, Inc.*, No. 1:22-cv-260, 2024 WL 3926226, at *4 (S.D. Ohio Aug. 22, 2024) (where defendants moved to strike a deposition transcript submitted by plaintiff with summary judgment briefing, stating, "The Federal Rules of Civil Procedure do not contemplate motions to strike documents other than pleadings." (citing FRCP 12(f))).

Plaintiff has not expressly asked this Court to exercise that inherent authority. However, even if she had (and even if this Court were to find that depositions constituted "court proceedings" within the reach of Local Rule 101.1(b)(i)—a question this Court need not decide here), this Court

---

[4] As noted by Defendant, ECF 42 at 8, subsection (d) of Rule 11 further expressly states that the rule "does not apply to disclosures and discovery documents, responses, objections, and motions under Rules 26 through 37." FRCP Rule 11(d).

would not do so. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). Plaintiff waived any objection to reference to the deposition transcript that could plausibly support her motion to strike. Plaintiff did not seek to have the transcript stricken until more than six weeks after her June 13, 2025 deposition; in that time she submitted a Status Report to this Court in which she raised concerns regarding "Counsel for Defendant's demeanor and lack of professionalism and decorum" during that deposition, but did not express any concern regarding the absence of local counsel. ECF 32 at 3. Plaintiff first raised this concern during summary judgment briefing, *see* ECF 42-7 at 2, two weeks after Defendant had filed its motion for summary judgment with the transcript attached.

Plaintiff nevertheless asserts that she raised the issue of local counsel's absence from the June 13, 2025 deposition "at the earliest opportunity, upon reflection of the deposition and subsequently, reviewing the transcript," ECF 44 at 5, *id.* at 4 ("Plaintiff raised this issue upon reviewing the transcript and discovering that local counsel had not participated in any capacity."). However, such an explanation, coupled with the fact that Plaintiff first raised the issue with Defendant's counsel on July 29, 2025, ECF 42-7 at 2, effectively amounts to a concession that Plaintiff did not reflect on the deposition or review the transcript until weeks after the deposition was taken. Moreover, the absence of local counsel would have been self-evident during the deposition itself. These are hardly circumstances that warrant this Court exercising its "poten[t]" inherent authority to strike Plaintiff's deposition transcript. Thus, Plaintiff's motion to strike will be denied.

## IV.    PLAINTIFF'S REQUEST TO STRIKE BI&A FILINGS

Though not styled as separate motions to strike, Plaintiff, in briefings on her motion to strike the deposition transcript and her and BI&A's cross-motions for summary judgment, raises the related issue that multiple of BI&A's filings with this Court have not been signed by BI&A's local counsel, in violation of Local Rule 101.1(b)(i) and, as a consequence (as Plaintiff argues), FRCP Rule 11(a). ECF 36 at 3–4; 37-1 at 6–7; 38-1 at 6–7, 10, 12–15; 44 at 6; 45 at 4–6.

As discussed above, Local Rule 101.1(b)(i) states that this Court permits an attorney admitted *pro hac vice* "to appear and participate as counsel in a particular civil case," but further provides that "[a]ny party represented by an attorney who has been admitted pro hac vice must also be represented by an attorney who is, and continuously remains, an active member in good standing of the Bar of this Court who shall sign all documents . . . ." Loc. R. 101.1(b)(i). Plaintiff has asserted, and the docket reflects, that BI&A has submitted multiple documents to this Court between January and July, 2025, that were executed by Mr. Waddell, only, without the signature of BI&A's local counsel, Mr. Michael J. Murphy. These include BI&A's answer to the amended complaint, dated January 30, 2025 (ECF 26), status report, dated June 16, 2025 (ECF 30), and motion and memorandum in support of its motion for summary judgment, dated July 15, 2025 (ECF 34, 35). ECF 36 at 3–4; 44 at 6.[5] This Court agrees that BI&A plainly violated Local Rule 101.1(b)(i)—among the Local Rules with which it was certified that Mr. Waddell had familiarity in Mr. Murphy's motion for Mr. Waddell's admission *pro hac vice*, ECF 5—however, the rule does not, itself, mandate a particular remedy for its violation.

---

[5] It appears that Mr. Waddell was also the sole signatory for BI&A on the parties' Joint Motion for Protective Order Governing Discovery and Production of Confidential Information, ECF 29 at 2, which *Plaintiff*'s counsel *also signed*.

Seeking a specific remedy, Plaintiff seizes on BI&A's violation of the Local Rules to argue that any filings lacking Mr. Murphy's endorsement should be deemed "unsigned," thus allowing Plaintiff to invoke FRCP Rule 11(a) which requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name" and that "[t]he court *must* strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a) (emphasis added). Plaintiff argues that pursuant to Rule 11(a), this Court must strike and deny both BI&A's motion for summary judgment and its answer (which Plaintiff argues should result in all facts alleged in her amended complaint being "deemed conceded and admitted by Defendant."). ECF 37-1 at 6–7, 38-1 at 11–15.

Plaintiff's invocation of Rule 11(a) is, again, misplaced.[6] First, while Plaintiff has argued that "Mr. Murphy is the only attorney of record . . . *with the authority under the Local Rules* to endorse a pleading, including the January 30, 2025, Answer," ECF 38-1 at 12–13 (emphasis added), it cannot be said, and Plaintiff has made no argument to suggest, that Mr. Waddell does

---

[6] This Court also notes that Plaintiff's invocation of Rule 11 also carries some irony, as the Rule also provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the representations to the court contained therein satisfy certain requirements. Fed. R. Civ. P. 11(b). In Plaintiff's reply in support of her motion to strike, the only purported decisions to which she cited in support of her contentions regarding BI&A's "noncompliant documents" appear, in fact, not to exist. Asserting that this Court "has held that failure to comply with Local Rule 101.1(b)(ii) [sic], requiring the presence and signature of local counsel, may result in striking unauthorized filings," Plaintiff cites to "*Simms v. Ctr. For Corrective Surgery, LLC*, No. GJH-20-0026, 2021 WL 918249, at 2–3 (D. Md. Mar. 9, 2021); *Rao v. Rosenfeld*, No. 17-cv-3323-PWG, ECF No. 44 (D. Md. Apr. 23, 2019)." ECF 44 at 2–3, 6. Westlaw contains no case with the identifier "2021 WL 918249," and searches of this Court's electronic case management system for the case numbers cited by Plaintiff returned completely different cases (a search for "20-cv-0026" returned a case titled *Shiheed v. Burnett et al.* l, and a search for "17-cv-3323" returned a case titled *Allstate Ins. Co. v. Rochkind et al.* for which the last filing was March 13, 2018).

not qualify as an "attorney of record" in this case for purposes of FRCP Rule 11(a)'s signature requirement. As Plaintiff has acknowledged, this Court granted BI&A's application to admit Mr. Waddell *pro hac vice*, in which BI&A expressly stated that Mr. Murphy would "serve as *co-counsel* in these proceedings," ECF 5 at 2 (emphasis added), and Mr. Waddell has been actively involved in the litigation of this case. In fact, Plaintiff herself has acknowledged that Mr. Waddell has been her primary point of contact for BI&A. ECF 36 at 4; 38-1 at 8 ("To date, every interaction with Defendant's counsel in this matter has been with Mr. Waddell."). The Certificates of Service appended to Plaintiff's filings throughout this litigation, including her motion to strike and her motion for summary judgment, have included Mr. Waddell among BI&A's counsel. *See, e.g.*, ECF 38 at 2. Thus, this Court concludes that Rule 11(a)'s requirement that every paper be signed by "at least one attorney of record" has been satisfied notwithstanding this Court's Local Rules regarding pro hac vice counsel.

Moreover, this Court notes that, even if Mr. Waddell were *not* considered an "attorney of record" in this case, Rule 11(a)'s mandate that the court strike unsigned papers is expressly inapplicable where "the omission is promptly corrected after being called to the attorney's or party's attention." Plaintiff notes that BI&A "has not filed any corrective pleadings addressing the deficiency." ECF 36 at 4; 38-1 at 7, 14. It continues to be the case that BI&A has not directly sought this Court's permission to correct those filings. However, this Court is not convinced that BI&A's inaction is itself actionable. Notwithstanding Plaintiff's arguments regarding Mr. Murphy

presumably having been on notice of the violation since its first occurrence in January,[7] it appears Plaintiff herself only first informed BI&A of the signature issue in an email dated July 23, 2025. ECF 36-4; 38-1 at 7, 14; 38-5. Six days later, shortly after Plaintiff informed BI&A of her intention to file a motion to strike the deposition transcript, BI&A's counsel emailed Plaintiff's counsel, stating, "Rule 11(a) does not require striking a pleading if any omission is promptly corrected, which we can do by filing a notice of correction tonight. Would you oppose? There is no prejudice to your client." ECF 42-7 at 1.[8] Plaintiff does not appear to have responded to BI&A's offer of corrective action. While BI&A presumably could have put the matter to rest by filing a notice of correction on its own initiative, Plaintiff's failure to respond to BI&A's offer can be taken as an indication that Plaintiff waived her challenge, and further indicates that Plaintiff was not

---

[7] Plaintiff has alleged that because Mr. Murphy "has been an email recipient of every unsigned pleading" through this Court's CM/ECF system, his "compl[iance] with his ethical obligations regarding competence and diligence" would create the presumption that he was "on notice of the lack of valid signature" as early as January 30, 2025 (when BI&A's answer was filed). ECF 38-1 at 13. Indeed, the declaration from Mr. Murphy that he "ha[s] personally reviewed and approved every filing in this case," ECF 42-1, which BI&A attached in support of its opposition to Plaintiff's motion to strike the deposition transcript, could be read as supporting Plaintiff's argument. However, while this Court recognizes that certain of BI&A's filings have, indeed, violated Local Rule 101.1(b)(i), and chides BI&A for those violations, it also finds Plaintiff's allegations regarding "diligent representation" on the part of Mr. Murphy somewhat bold considering the lack of diligence, as described in section III, *supra*, in Plaintiff's raising of her arguments regarding the deposition transcript, and, for that matter, in raising the issue of "unsigned" documents with BI&A, which Plaintiff did not herself do until July 23, 2025.

[8] Later, in their response to Plaintiff's motion to strike, BI&A reiterated that they could file corrected versions if requested. ECF 42 at 10 n.7 ("Mr. Murphy can submit a new signature page for BI&A's Motion for Summary Judgment or any other filing that Plaintiff contends causes her severe prejudice, or as requested by the Court.").

prejudiced by the signature violation.[9] In fact, Plaintiff's arguments in summary judgment briefing reveal that Plaintiff is attempting to exploit the minor technical breach for the extraordinary advantage of having all the allegations in her amended complaint deemed admitted as true. ECF 38-1 at 11–15. Thus, even if Mr. Waddell were not considered an "attorney of record" in this case, this Court would not find it appropriate to strike the challenged papers.

Because this Court finds that BI&A's filings have not run afoul of FRCP Rule 11(a), the only question that remains is what action, if any, this Court should take in response to BI&A's violations of Local Rule 101.1(b)(i). As noted above, the Local Rules do not, themselves, mandate a particular remedy for violation of this rule. Given the clear policy of the Fourth Circuit Court of Appeals to favor the resolution of cases "on their merits instead of disposing of them on technicalities," *Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007) (internal quotation marks omitted), in addition to the considerations of waiver and lack of prejudice discussed above, this Court, while not condoning BI&A's errors, will not strike BI&A's motion for summary judgment and answer on the basis of its technical violations. *See Mills v. United States*, Crim. No. PJM 09-0468, 2012 WL 718839, at *4 (D. Md. Mar. 5, 2012) ("There is a strong judicial preference that cases be decided on their merits and not on the basis of procedural defaults . . . . The Court keeps this preference in mind in exercising its broad discretion over interpretation and application of the Local Rules, . . . including whether to excuse a departure from the Rules.").

---

[9] *See Waskey v. O'Neal*, No. 8:18-cv-02824-PX, 2019 WL 2502389, at *1 (D. Md. June 17, 2019) ("[A] pleading will not be stricken [under Rule 11(a)] unless the movant can show that a failure to sign 'severely prejudiced the opposing party.'") (quoting *Steamship Trade Ass'n of Baltimore, Inc. v. Peters*, No. WDQ 09-109, 2009 WL 2924810, at *2 (D. Md. Sept. 9, 2009) (additional internal quotation marks omitted). Plaintiff has not articulated any semblance of prejudice to her resulting from the signature violations. Indeed, this case has proceeded through discovery and up to summary judgment briefing despite BI&A's failure to include Mr. Murphy's signature on certain of its filings.

## V.    MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standards

Both parties seek summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. That rule provides that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted); *see also Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 WL 1441982, at *6 (D. Md. Apr. 1, 2019). In considering each motion, the court should "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Rossignol*, 316 F.3d at 523). If the court finds that there is a genuine issue of material fact, both motions must be denied; but the court will render judgment if there is no genuine issue of material fact and "one or the other party is entitled to prevail as a matter of law." *Kantsevoy*, 2019 WL 1441982, at *6 (citation omitted).

### B. Analysis

Plaintiff has brought claims for race- and color-based discrimination under Title VII. 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove such a claim either through direct evidence of intentional discrimination or by proceeding under the well-established burden-shifting framework announced in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell-Douglas*"). *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227–28 (4th Cir. 1998).

Plaintiff has not adduced any direct evidence of race- or color-based discrimination.[10] Thus, her claims must be analyzed under the *McDonnell-Douglas* framework. Plaintiff initially "has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell-Douglas*, 411 U.S. at 802). A *prima facie* case requires proof of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

If Plaintiff satisfies her initial burden, the *McDonnell-Douglas* framework shifts the burden to BI&A "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *Burdine*, 450 U.S. at 253. BI&A's burden is one of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). The burden then shifts back to Plaintiff to show by a preponderance of the evidence that BI&A's proffered reasons were pretextual for intentional discrimination. *Burdine*, 450 U.S. at 253. In other words, Plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).

### 1.  BI&A's Motion for Summary Judgment

Regarding the first factor for Plaintiff's *prima facie* case, it is undisputed that Plaintiff, whose race is Asian and color is brown, is a member of a protected class. As for the second factor,

---

[10] "Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *E.E.O.C. v. Greystar Mgmt. Servs. L.P.*, No. ELH-11-2789, 2013 WL 6731885, at *11 (D. Md. Dec. 18, 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)) (internal quotation marks omitted).

"[a] satisfactory performance review may be used to show that an employee was meeting expectations" at the time of the adverse employment action. *Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 495 (D. Md. 2011), *aff'd*, 521 F. App'x 307 (4th Cir. 2013) (unpublished per curiam). As discussed below, Plaintiff's claim challenges, *as the adverse employment action*, the very performance review that awarded her a performance score tied for the highest among Mr. Balsamo's direct reports, indicating she was meeting BI&A's legitimate expectations at the time of that action.

The third factor, however, presents a problem for Plaintiff. "It is well established that Title VII's protections extend only to adverse employment actions." *Chika v. Plan. Rsch. Corp.*, 179 F. Supp. 2d 575, 584 (D. Md. 2002) (citing *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). As an initial matter, this Court reiterates (as explained in its previous opinions at the motion to dismiss stage) that Plaintiff can only maintain claims for acts that occurred between April 2, 2022 and May 4, 2022 (the date of Plaintiff's resignation). ECF 10 at 5–6; ECF 24 at 4–5. This Court previously and expressly included "the promotional decision in 2020" among a list of incidents that were "clearly time-barred and cannot be pursued in this case." ECF 24 at 5. This Court allowed Plaintiff's race and color discrimination claims to proceed to discovery only because it could not "definitively determine from the language of the Amended Complaint that the denial of Plaintiff's *other* requests for promotion or the issuance of unfair performance reviews are time-barred." *Id.* at 6 (emphasis added); *see also* ECF 19 ¶ 73 (Plaintiff alleging that "[b]etween February 2022 and April 2022, Mr. Balsamo denied Plaintiff's request for a promotion that would bring her to the same level as Ms. Wooldridge [sic].").

At summary judgment, the only hiring decision with which Plaintiff has continued to take issue—though apparently not as part of her *prima facie* case of discrimination—occurred in July

2020.[11] Plaintiff does not dispute that BI&A did not advertise any Level 5 positions, nor were there

any available, and nor did Plaintiff apply for any, in the relevant time period after April 2, 2022.

Because Plaintiff has not alleged, nor has she produced any evidence to suggest, that she sought

another position at BI&A between April 2, 2022 and May 4, 2022,[12] there exists no genuine issue

of material fact regarding Plaintiff's alleged discrimination in BI&A's hiring process. Rather,

Plaintiff cites two incidents impacting her compensation—(1) the issuance of a performance

review regarding her 2021 job performance and (2) the issuance of a corresponding COLA—as

the "adverse employment actions" at issue.[13]

---

[11] While Plaintiff's opposition to BI&A's motion for summary judgment continued to raise the issue of the circumstances of Ms. Woolridge's 2020 hiring (*see* ECF 37-1 at 9–10, 14–15; 37-5; 37-6), when arguing her prima facie case in the same filing, she cited only "Defendant's issuance of Plaintiff's COLA" as the "adverse action" at issue. *Id.* at 11. Plaintiff's own motion for summary judgment does not reference any hiring decision in her discussion of her disparate treatment claim. ECF 38-1 at 16–17 (citing "[r]eceiving less pay"—specifically, receiving "a COLA lower than what it should have been given her performance in 2021"—as the "adverse action" in her prima facie case).

[12] The record reflects that, within the relevant time period, Plaintiff unsuccessfully sought a *raise in pay* (in her deposition, Plaintiff first described this as a request for a raise, then as a request for a "promotion," while acknowledging there were no available positions at the time, ECF 35-4 at 156:19–157:11); upon denial of her request, she announced her intent to resign. *See* ECF 35-5. However, while she asserts that other employees who had worked on a similar project had received raises based on that project, she has not expressly argued that the denial of her request was an "adverse employment action" motivated by discrimination. In addition, in Plaintiff's "Affidavit," she states, "Mr. Balsamo denied me the opportunity to be promoted to a Level 5 position"; however, she does not identify any date for this purported action. Pl. Aff. ¶ 13. Read in conjunction with Plaintiff's responses to BI&A's SUMF, and with no evidence offered to contradict, it appears Plaintiff's assertion does not pertain to the relevant period of April 2, 2022 through May 4, 2022.

[13] Only in her *reply* in support of her motion for summary judgment does Plaintiff expressly assert that "[t]he adverse actions include: . . . *disparate workload/leveling* and pay relative to similarly situated non-Asian, non-brown coworkers." ECF 45 at 6 (emphasis added). "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not

Some further clarification of the "adverse employment actions" that Plaintiff alleges is necessary. First, it appears that Plaintiff has abandoned her previous argument that the fact of Ms. Woolridge having received a higher COLA increase *in total dollars* than Plaintiff is indicative of discriminatory intent, as Plaintiff appears to have conceded that the total dollar increases are entirely determined by the application of the COLA *percentages* to the employees' base salaries, ECF 35-4 at 116:16–117:6, 125:17–20; ECF 37-2 at 6–7 (Plaintiff's response to BI&A SUMF ¶¶ 8, 10), and Plaintiff has not disputed that Ms. Woolridge had a higher base salary than Plaintiff. ECF 35-5 ¶ 3 (Mr. Balsamo referring to "Ms. Woolridge's higher salary"); ECF 37-2 at 16 (Plaintiff not disputing that "[a]t the time of her resignation, Plaintiff's annual salary was $117,224.00 . . . ."); ECF 37-5 (showing annual salary of $150,000 for Level 5 position offered to Ms. Woolridge on July 14, 2020).[14]

It is further undisputed that calculations of COLA *percentage* increases did not involve any exercise of discretion by BI&A but, rather, consisted of application of an employee's performance score to BI&A's standard distribution curve (itself based on the range of performance scores). *See* BI&A SUMF ¶¶ 8–11; ECF 37-2 at 6–7 (Plaintiff's response to BI&A SUMF ¶¶ 8–11); ECF 35-2

---

be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). However, even if this Court were to consider Plaintiff's assertion that her workload constituted an adverse employment action, this Court notes that "'[a]dditional duties' typically do not constitute adverse employment actions unless 'they are so weighty as effectively to change these basic terms of employment.'" *Vedula v. Azar*, No. TDC-18-0386, 2020 WL 5500279, at *9 (D. Md. Sept. 11, 2020) (quoting *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011)) (alteration in *Vedula*). *See also Lazarte v. Montgomery Cnty. Public Schs.*, No. DLB-20-1515, 2021 WL 5770281, at *5 n.3 (D. Md. Dec. 6, 2021) ("[t]he Fourth Circuit . . . has not explicitly acknowledged that an employer's assignment of disparate workloads, standing alone, is an adverse employment action.") (quoting *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, No. 1:17CV730, 2019 WL 688655, at *6 (M.D.N.C. Feb. 19, 2019), *aff'd*, 29 F.4th 148 (4th Cir. 2022)).

[14] This difference in salary would also preclude Plaintiff from advancing a claim based on the total dollar increase because it constitutes a clear differentiating factor between the two employees. This Court could not find that Plaintiff and Ms. Woolridge were "similarly situated" as required for the fourth element of a *prima facie* case.

(Shafer Decl.) ¶¶ 4–5; ECF 37-1 at 15 (Plaintiff stating, "Mr. Balsamo graded each employee and BI&A applied that score to an algorithm to determine each individual employee's COLA."). Thus, while the respective dates of Plaintiff's performance score and COLA percentage increase may have consequences for their consideration as eligible "adverse employment actions" under the particular circumstances of this case, Plaintiff's claims are, substantively, predicated entirely on the effect of the alleged discrimination in Plaintiff's performance review from Mr. Balsamo on her COLA increase.

In arguing that Plaintiff has not shown an "adverse employment action," BI&A has primarily relied on its assessment of the timing of the incidents at issue; thus, this Court will first address that procedural point before analyzing whether Plaintiff has, in substance, shown such an action.

Plaintiff amended her complaint to allege that Mr. Balsamo issued her the disputed performance review "[b]etween February 2022 and April 2022," and that she received the disputed COLA "[i]n April 2022." ECF 19 ¶¶ 72, 74. At summary judgment, the record reflects that Plaintiff still, despite this Court's previous caution regarding temporal ambiguity, has not met her burden to demonstrate that these incidents occurred within the relevant time frame.

Regarding the disputed performance review, Plaintiff was asked during her deposition, "When was your performance review issued for the 2021 year?" She responded, "Around April, I believe." ECF 35-4 at 110:8–10. In her opposition to BI&A's motion, Plaintiff makes no mention of the date of the performance review, though she refers to the same paragraphs of her amended complaint. See ECF 37-1 at 4 (citing ECF 19 ¶ 74). In addition, nothing in Plaintiff's "Affidavit" attached to her summary judgment filings mentions the date the performance review was issued. BI&A, accordingly, has called out Plaintiff's "dateless assertion" regarding the performance

review. ECF 43-1 at 3. Somewhat conspicuously, though, BI&A itself has not identified a date for the review. In its Statement of Undisputed Facts contained in its motion for summary judgment, it states, "During the 2021 performance year, Plaintiff received a performance score of 37 . . . ." BI&A SUMF ¶ 37; *see also id.* ¶ 19. BI&A has submitted a partially redacted chart, attached to the declaration of Mr. Balsamo and referred to in BI&A's motion as "Contract Department Ratings for 2021 Performance Year" (ECF 35 at 7–8), that appears to compile the 2021 performance scores given by Balsamo to his five direct reports; however, the document does not state the specific date(s) on which the scores were decided or issued, Ex. A to ECF 35-5, nor do the declarations of Mr. Balsamo and Mr. Shafer that BI&A includes with its motion. *See* ECF 35-2 ¶ 7; 35-5.

Similar ambiguity appears with respect to the disputed COLA. BI&A does not identify, anywhere in its motion, the date on which the COLA was issued, *see, e.g.*, BI&A SUMF ¶ 37, nor do the attached declarations (including that of Cynthia Stacey, despite Stacey stating that she "reviewed the cost-of-living adjustment ('COLA') increases of all eligible BI&A's employees, including all of Joseph Balsamo's direct reports during the relevant period." ECF 35-1 ¶ 13). For her part, Plaintiff, in her opposition to BI&A's motion, her own motion for summary judgment, and her reply in support of that motion, refers to the COLA only as having been issued in "April 2022," though in no instance does she cite to any record evidence (again, her "Affidavit" is silent on this point) to corroborate even that nonspecific date. ECF 37-1 at 4; 38-1 at 11–12; 45 at 2; Pl. Aff. BI&A did not expressly dispute the "April 2022" characterization of the COLA in its opposition to Plaintiff's motion. ECF 43-1 at 3–4.

That Plaintiff, after her claims were permitted to proceed to discovery solely on the basis of the ambiguities in her amended complaint, still either cannot or will not identify the dates of the disputed incidents would, on its own, be potentially disqualifying for Plaintiff's claims. Plaintiff

has the burden at summary judgment of establishing a *prima facie* case of discrimination, including

an adverse employment action which, as defined by the circumstances of this case, includes only

those having occurred between April 2, 2022 and May 4, 2022.

Notably, an exhibit submitted by *Plaintiff* with her opposition to BI&A's motion appears

to suggest that both disputed events, the performance review and the COLA, occurred prior to

April 2, 2022. Exhibit K to Plaintiff's opposition consists of two internal complaints Plaintiff filed

via BI&A's ethics hotline, on October 28, 2021, and April 4, 2022, respectively. ECF 37-2 at 4;

37-12. The latter complaint states that Plaintiff alleged that "Respondent PS" (identified elsewhere

on the April 4, 2022 complaint as Patrick Shafer) "lied to her because *in a conversation on*

*Wednesday, 3/30/22*, he told her that he would look into a concern she brought to him about if she

should be promoted *and why her COLA increase was not higher compared to others*." ECF 37-2

at 3 (emphasis added). That Plaintiff apparently engaged Mr. Shafer in discussion of her COLA

increase on March 30, 2022, not only suggests that the disputed COLA increase was received

before that date (and thus, before April 2, 2022), but consequently suggests that the performance

score was issued before those dates, as it is undisputed that COLAs are based in part on the

performance scores. Thus, it would appear that Plaintiff has failed to establish that she suffered an

"adverse employment action" within the relevant time period, and, thus, has failed to establish her

*prima facie* case.

However, in her reply in support of her motion for summary judgment, Plaintiff—for the

first time in this litigation—raises the argument that, even if the above incidents fall outside of the

relevant time period, the provisions of Title VII added by the Lilly Ledbetter Fair Pay Act of 2009

(the "LLFPA") keep her claims alive. ECF 45 at 2 (Plaintiff invoking what she characterizes as

"Title VII's compensation rule that each paycheck reflecting a discriminatory decision is

actionable."). The provisions added by the LLFPA specify that "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter," not only when a discriminatory compensation decision is made or when an individual is subjected to that decision, but also "when an individual is affected by application" of that decision, "including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). Thus, for Title VII claims pertaining to alleged discriminatory *compensation* acts, specifically, "[a] modified version of the 'continuing violation' doctrine allows plaintiffs to bring Title VII claims for timely payments made pursuant to an untimely compensation decision." *Brooks v. United Parcel Serv. Inc.*, No. DKC 20-2617, 2021 WL 4339194, at *5 n.5 (D. Md. Sept. 23, 2021) (citing 42 U.S.C. § 2000e-5(e)(3)(A)). Here, Plaintiff argues that her "April 2022, compensation reflected the challenged COLA and is, therefore, actionable." ECF 45 at 7. Putting aside the fact that Plaintiff has not provided any evidence (in the form of, for example, a pay stub) of her compensation between April 4, 2022 and May 2, 2022, this Court would be reluctant to address the merits of Plaintiff's late invocation of the LLFPA without first providing BI&A the opportunity to respond. However, because this Court concludes that Plaintiff's *prima facie* case fails on other grounds, it need not decide the issue.

Similarly, while not providing the ultimate basis for this Court's decision at summary judgment, this Court notes that the unique nature of Plaintiff's alleged discrimination invites the question of whether Plaintiff has *substantively* demonstrated an "adverse employment action" sufficient to support her *prima facie* case. As previously noted, Plaintiff's claims are predicated entirely on the theory that her performance score, tied for the *highest* among those Mr. Balsamo issued to his direct reports but allegedly issued with discriminatory intent, coupled with the resultant COLA increase percentage given to Plaintiff, which was *higher* than that of her

comparator, Ms. Woolridge, constituted an "adverse employment action" because, *by Plaintiff's contention*, the respective workloads and performance of Mr. Balsamo's direct reports merited a *more substantial* difference between her score and COLA percentage and those of her comparator. *See, e.g.*, ECF 37-1 at 4 ("Mr. Balsamo failed to properly credit and acknowledge Plaintiff's accomplishments when performing her performance evaluation, including her pivotal role in ensuring Defendant obtained its largest ever contract award.") (citing only to ¶ 74 of Plaintiff's amended complaint); *id.* at 9 ("Plaintiff, despite having a significantly higher workload, and of a greater complexity, was scored only an '8' in 'Job Knowledge.'") (citing only to ¶ 62 of her amended complaint and to the performance ratings attached to BI&A's motion (ECF 35-5 at 10)); *id.* at 11 ("Plaintiff's contributions were objectively greater than those made by Ms. Woolridge as, for example, Plaintiff's efforts secured the award of a $500,000,000.00 contract for BI&A.") (citing only to ¶ 40 of Plaintiff's "Affidavit"); *id.* ("Plaintiff's workload was quantitatively higher than her non-Asian and non-brown colleagues.") (citing only to ¶¶ 105, 122 of her amended complaint); *id.* at 12 ("Plaintiff was not compensated properly compared to her peers given that she had a performance far beyond that of Ms. Woodridge [sic].").

"An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks omitted, alteration in original)), *aff'd* 465 F. App'x 274 (4th Cir. 2012) (unpublished per curiam). "Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment." *Thorn*, 766 F. Supp. 2d at 598 (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 737 n.6 (D. Md. 2009) (internal quotation marks omitted)). "[N]ot everything

that makes an employee unhappy is an actionable adverse action." *Thorn*, 766 F. Supp. 2d at 599

(quoting *Settle v. Baltimore Cnty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999), *aff'd mem.*, 203 F.3d

822 (4th Cir. 2000) (unpublished per curiam)) (alterations in original).

"A performance review which has no effect on Plaintiff's compensation or promotion

cannot be considered an adverse employment action." *Pulley v. KPMG Consulting, Inc.*, 348 F.

Supp. 2d 388, 395 (D. Md. 2004), *aff'd*, 183 F. App'x 387 (4th Cir. 2006) (unpublished per

curiam). However, "[a] 'downgrade of a performance evaluation *could* effect [sic] a term,

condition, or benefit of employment' if it has a tangible effect on the terms or conditions of

employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (quoting

*Von Gunten v. Maryland*, 243 F.3d 858, 867 (4th Cir. 2001), *abrogated on other grounds by*

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)), *abrogated on other grounds by*

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). *See also Thompson v. Potomac Elec. Power*

*Co.*, 312 F.3d 645, 652 (4th Cir. 2002) (while "[a] poor performance rating does not in itself

constitute an adverse employment action because it has no tangible effect upon the recipient's

employment[,] . . . [it] is actionable . . . where the employer subsequently uses the evaluation as a

basis to detrimentally alter the terms or conditions of the recipient's employment.") (quoting

*Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)); *Hwang v.*

*Becerra*, No. TDC-20-1025, 2022 WL 3577734, at *8 (D. Md. Aug. 19, 2022) (a decrease in

performance rating "does not constitute an adverse employment action absent evidence that the

change actually affected the terms and conditions of employment such as . . . pay or opportunities

for promotion.") (citing *James*, 368 F.3d at 377–78).

A survey of case law suggests that a performance evaluation is most commonly raised as

an "adverse employment action" in instances where the evaluation was negative or marked a

decline from previous evaluations. Here, however, Plaintiff's 2021 performance score was tied for the highest among Mr. Balsamo's direct reports. And, Plaintiff has not made any allegations comparing her 2021 performance score to those she received in previous years (to the contrary, she has not disputed that the range of scores that Mr. Balsamo issued for the 2021 performance year was within the same range of scores he had historically given, and a performance evaluation dated January 9, 2021, apparently for the 2020 performance year, indicates that Plaintiff received the same score (37) for 2020 as she did for 2021, ECF 35-5 ¶ 8; Ex. B to ECF 35-5).

However, it is undisputed among the parties that the performance scores impacted employees' COLA awards. BI&A SUMF ¶¶ 9–11; ECF 37-2 at 6–7 (Plaintiff's response to BI&A SUMF ¶¶ 9–11); ECF 37-1 at 15. Thus, had Plaintiff argued that the allegedly discriminatory performance review for the year 2021, despite not being overtly "negative" or constituting a decline from previous reviews, nevertheless detrimentally impacted the terms of her employment, this would likely, in substance, suffice as an "adverse employment action." *See Mackall v. Colvin*, No. ELH-12-1153, 2015 WL 412922, at *17 ("Typically, an adverse employment action has been found in cases of 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'") (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), *abrogated on other grounds by Muldrow*, 601 U.S. 346); *Hwang*, 2022 WL 3577734, at *7 ("[A]ctions that do not cause a 'decrease in compensation, job title, level of responsibility, or opportunity for promotion' ordinarily do not constitute adverse employment actions under Title VII.") (quoting *Boone*, 178 F.3d at 256–57); *Zackrie v. Lockheed Martin, Corp.*, No. RWT 04-1864, 2006 WL 2849767, at *4 (D. Md. Oct. 2, 2006) (in evaluating racial discrimination in compensation claim under 42 U.S.C. § 1981 (which the court noted requires the same elements for a *prima facie* case as for a discrimination claim under Title VII), rejecting

plaintiff's assertion that receiving a "Successful Contributor" rating in her evaluations amounted to an adverse employment action because plaintiff did not "allege[], nor present[] any evidence to show that those ratings caused her to receive a decrease in salary.").

Plaintiff has not argued that the disputed performance review led to a *decrease* in her compensation—the record reflects that she received a 2.88% COLA *increase*—nor has she argued that her COLA increase, specifically, was less than it should have been. Rather, unsatisfied with a performance score and COLA that exceeded those of her comparator, she is arguing that, if not for discriminatory intent on the part of BI&A, the *gaps* between her performance score—and corresponding COLA increase—and those of her coworkers would have been *greater* than they were. Put another way, the "adverse employment action" that Plaintiff is asserting is that Mr. Balsamo's other direct reports were scored, and consequently compensated, more generously for their work than Plaintiff was for hers. *See* ECF 37-1 at 15 ("One additional point on the rubric is a dramatic underselling of the difference between Plaintiff's performance and contributions compared to either Ms. Toth's or Ms. Woolridge, even considering their respective differences in job level.").

To be sure, the fact of an employment action being ostensibly "positive" does not, by definition, preclude its sufficiency as an "adverse employment action" for purposes of a discrimination claim. *See Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.*, 48 F. Supp. 3d 1054 (N.D. Ill. 2014) ("If . . . a facially positive performance evaluation and annual merit increase could *never* constitute a 'materially adverse action,' the [employer] could potentially assign every single African American employee a rating of 'meets expectations' and corresponding merit increase, while awarding all Caucasian employees a rating of 'exceeds expectations' and equivalent raise, and not run afoul of federal law—a proposition that is clearly

incorrect.") (emphasis in original) (collecting cases). *See also Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005) (holding that where there was evidence that evaluation and compensation "were inextricably intertwined," a performance evaluation which assigned plaintiff a rating of "met expectations" rather than "exceeded expectations" and directly resulted in plaintiff receiving a 3% raise rather than a 5% raise (which would translate to a difference of over $900 per year), was an "adverse employment action" for purposes of her Title VII race discrimination claim). Rather, "the issue of whether a positive performance evaluation and merit increase is adverse is relative to the context in which that evaluation and increase was given." *Jones*, 48 F. Supp. 3d at 1054 (emphasis added).

This Court is not convinced, in the circumstances of this case, that Plaintiff's subjective assertions—that BI&A, despite issuing her top performance scores and a higher COLA than her comparator, nevertheless failed to adequately account for its employees' respective workloads and contributions—are sufficient to satisfy her burden of showing that the performance evaluation and corresponding COLA qualify as an "adverse employment action." The circumstances here are notably distinguishable from the hypothetical offered in *Jones*, and the facts in *Gillis*, both of which contemplated circumstances in which the plaintiff received *lower* performance evaluations and corresponding raises than did other employees.

However, even assuming, *arguendo*, that these circumstances *could*, in the abstract, constitute an "adverse employment action," Plaintiff has not offered evidence sufficient to support a reasonable inference—necessary to sustain her argument—of a disparity in workload and performance between Plaintiff and Mr. Balsamo's other direct reports. Ignoring Plaintiff's citations

to her amended complaint (which does not constitute record evidence),[15] Plaintiff has offered the following: (1) a handful of emails and text messages which *precede* the 2021 performance year that was the basis for the performance evaluation at issue, *see* ECF 37-1 at 4 (citing ECF 37-3 ("Plaintiff Email to Mr. Balsamo Reminding him of Additional Duties," dated November 13, 2019); 37-4 ("Text messages to Abraham Joseph and Dominic Taylor Concerning Assignments and Work Progress," dated May 23, 2018, and December 7, 2018, respectively)); 37-1 at 9 (citing ECF 37-9 ("October 30, 2020, Email from Plaintiff to Mr. Gildea and Ms. Jenkins")); (2) a text message exchange from February 1, 2021 in which Plaintiff asserted that program managers had begun to reach out to Plaintiff for assistance "due to Ms. Woolridge's nonperformance," ECF 37-1 at 10 (citing ECF 37-7); and (3) Plaintiff's "Affidavit," in which she asserts, "Mr. Balsamo's performance rating of Ms. Woolridge for 2021 was not justified as she failed to deliver and complaints were lodged against her, even by the COO," "[d]espite receiving multiple complaints concerning Ms. Woolridge['s] performance during the 2021 rating year, Ms. Woolridge received a comparable percentage increase resulting in a larger 'net' increase that [sic] I did," and "[t]hough my overall rating for 2021 was slightly higher than Ms. Woolridge's the difference in my accomplishments compared to hers was significant." Pl. Aff. ¶¶ 30-32.[16]

Thus, Plaintiff's claims of an "adverse employment action" rest entirely on subjective, conclusory, and uncorroborated assertions. The Fourth Circuit has repeatedly stated that such assertions are ordinarily insufficient to withstand summary judgment. *See CTB, Inc. v. Hog Slat,*

---

[15] "[N]on-moving parties who would bear the burden of proof on an issue at trial . . . may not simply rest on assertions in their complaint but must produce evidence that could—if believed—permit a reasonable factfinder to rule in their favor." *Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024) (citing *Celotex Corp.*, 477 U.S. at 322–25).

[16] Plaintiff has not specified, nor adduced independent evidence of, the "complaints" she asserts were lodged against Ms. Woolridge.

*Inc.*, 954 F.3d 647, 658–59 (4th Cir. 2020) ("[A] party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'") (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("Williams's testimony that she believed her evaluations to be 'unfair and untrue and incorrect' is merely a self-serving opinion that cannot, absent objective corroboration, defeat summary judgment.")); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to withstand the summary judgment motion."). This Court has similarly stated that a "plaintiff's subjective feelings about the nature of the alleged 'employment injuries' they suffered is clearly a necessary but not a sufficient evidentiary showing to withstand summary judgment." *Settle*, 34 F. Supp. 2d at 989.

However, as Plaintiff has noted (in her *reply*, ECF 45 at 9), the Fourth Circuit "has made clear that—so long as they are 'based on personal knowledge or firsthand experience'—'self-serving *affidavits* offered by the non-movant can be used as evidence to defeat summary judgment.'" *Alexander*, 105 F.4th at 178 (quoting *Jones v. Solomon*, 90 F.4th 198, 206–07 (4th Cir. 2024)) (emphasis added). In *Lovett v. Cracker Barrel Old Country Store, Inc.*, in the context of a Title VII retaliation claim, the Fourth Circuit stated, "[C]ourts have 'long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is "self-serving."' . . . Rather, if such an affidavit is 'based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts.'" 700 F. App'x 209, 212 (4th Cir. 2017) (unpublished) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). *But see Malghan v. Evans*, 118 F. App'x 731, 733 (4th Cir. 2004) (unpublished per curiam) (stating that where only evidence supporting plaintiff's assertion, at *pretext* stage of *McDonnell-Douglas* framework, that he was the more

qualified candidate for a position "consisted solely of his own, self-serving and conclusory affidavit," that evidence was "insufficient as a matter of law to counter substantial evidence of legitimate, non-discriminatory reasons for an adverse employment action and to stave off summary judgment."); *Schauer v. Emerge, Inc.*, No. CCB-22-cv-731, 2023 WL 5297745, at *5 (D. Md. Aug. 16, 2023) (in context of claim brought pursuant to Fair Labor Standards Act, finding plaintiffs' affidavits which consisted of "conclusory characterization of the facts" to be insufficient to preclude grant of summary judgment) (internal quotation marks omitted) (citing *Wai Man Tom*, 980 F.3d at 1037, 1042). "The key question remains whether the non-movant has produced enough evidence to demonstrate that a 'dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' . . . Sometimes, the non-movant's affidavit will be insufficient to meet this standard, and other times it will be enough." *Lovett*, 700 F. App'x at 212 (quoting *Anderson*, 477 U.S. at 248).

This Court remains skeptical that the assertions in Plaintiff's "Affidavit" are sufficient to satisfy Plaintiff's burden of showing, by a preponderance of the evidence, that she was subject to an "adverse employment action," rather than her having simply been unhappy that, in her opinion, "Mr. Balsamo failed to properly credit and acknowledge Plaintiff's accomplishments" when he assigned her the highest performance score and "Job Knowledge" score of his direct reports. ECF 37-1 at 4. This Court adopts the oft-articulated proposition that "courts do not 'sit as a kind of super-personnel department weighing the prudence of employment decisions." *Shipton v. Baltimore Gas and Elec. Co.*, 109 F.4th 701, 709 (4th Cir. 2024) (quoting *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 350 (4th Cir. 2014)). Deciding how much credit should be given to accomplishments is within the purview of a supervisor, not the Court. However, this Court need not, and thus declines to, decide BI&A's motion on the "adverse employment action" ground,

because it concludes that Plaintiff has separately failed to meet her burden with respect to the fourth element of her *prima facie* case—that similarly-situated employees outside of her protected class received more favorable treatment.

Where a plaintiff relies "upon a comparison to an employee from a non-protected class . . . the validity of their *prima facie* case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (unpublished per curiam) (citing *Burdine*, 450 U.S. at 258). "The similarly situated element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in *some* respects, but similarly-situated *in all respects*.'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019) (internal quotation marks omitted)) (emphasis in original).

The Fourth Circuit has rejected the idea of a "bright-line rule for what makes two jobs 'similar' under Title VII"; however, it has identified a number of factors for courts to consider, including "'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Spencer*, 919 F.3d at 207 (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)) (internal quotation marks omitted). A showing that employees are similarly situated includes evidence that the employees "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood*, 387 F. App'x at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (alterations in original). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the

would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (unpublished per curiam) (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (internal quotations omitted)). *See also Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (the purpose of the "similarly-situated" analysis "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus.") (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

In her summary judgment filings, Plaintiff compares her performance evaluation scores to two individuals: Susan Woolridge, and Kerrigan Toth. Specifically, she highlights that both Ms. Woolridge and Ms. Toth received scores of "7" in the "Job Knowledge" category of BI&A's rubric, one point less than Plaintiff's score of "8" in that category. ECF 37-1 at 8, 15. Plaintiff argues that "[o]ne additional point on the rubric is a dramatic underselling of the difference between Plaintiff's performance and contributions compared to either Ms. Toth's or Ms. Woolridge, even considering their respective differences in job level." ECF 37-1 at 15.

Plaintiff's amended complaint contained no mention of Ms. Toth, and the record does not reflect Plaintiff having raised Ms. Toth as a comparator prior to Plaintiff's opposition to BI&A's motion for summary judgment. By contrast, Ms. Woolridge was mentioned multiple times in the amended complaint, and Plaintiff has since—in her deposition—expressly identified Ms. Woolridge as her comparator, ECF 35-4 at 113:18–114:5. Thus, this Court will treat Ms. Woolridge as Plaintiff's sole comparator in assessing whether Plaintiff has shown that a "similarly

situated" individual was treated differently by Mr. Balsamo in his evaluation of their performance.[17]

BI&A has argued that Ms. Woolridge is not a similarly situated comparator because her position "was a grade higher and required a security clearance that Plaintiff's [sic] did not possess (and made no application to obtain)," and Ms. Woolridge "had nearly double the years of relevant experience." ECF 35 at 23; *see also* ECF 43 at 12.[18] Plaintiff, in her opposition to BI&A's motion, has argued that "Ms. Woolridge should be considered a proper comparator because she performed substantially similar duties to the Plaintiff, she originally applied for a Level 4 position, and she reported directly to Mr. Balsamo." ECF 37-1 at 12–13. It is undisputed that Plaintiff and Ms. Woolridge reported to the same supervisor, Mr. Balsamo, and were subject to the same standards—

---

[17] Even were this Court to consider Plaintiff's suggestion of Ms. Toth as a comparator, this Court could easily dispense of the suggestion. The crux of Plaintiff's arguments regarding Ms. Toth are that despite, as Plaintiff asserts, Ms. Toth having "only worked retail jobs" before her "entry Level 2 position" at BI&A, ECF 37-1 at 8, Mr. Balsamo gave Ms. Toth a "Job Knowledge" score only one point below that which he gave to Plaintiff. By Plaintiff's own conclusory assertion in her "Affidavit," Ms. Toth, in her "entry Level 2 position," "had no experience or qualifications to assist me with my work." Pl. Aff. ¶ 39. Thus, Ms. Toth was not "similarly situated" to Plaintiff. Plaintiff's argument, in effect, seems to be that people differently situated to her should have received far worse evaluation scores. That argument does not permit relief under the *McDonnell Douglas* framework.

[18] While BI&A has emphasized the differences in Ms. Woolridge's and Plaintiff's experience and security clearance to render Ms. Woolridge an inadequate comparator, BI&A has not suggested that Mr. Balsamo took those facts into account in assigning the performance scores (BI&A's assertions that he did so for purposes of the 2020 decision to hire Ms. Woolridge at Level 5 are immaterial). Because of this, and because it finds Ms. Woolridge to be an inadequate comparator on other grounds, this Court declines to consider, as part of its "similarly-situated" analysis, the assertions in Plaintiff's "Affidavit" pertaining to comparison of her experience and qualifications to Ms. Woolridge's. *See* Pl. Aff. ¶¶ 16–23. This Court notes, however, that certain of those assertions appear to be contradicted by portions of BI&A's statement of facts which Plaintiff did not dispute. *See* BI&A SUMF ¶ 16; ECF 37-2 at 9 (Plaintiff's response to BI&A SUMF ¶ 16) (parties not disputing that Ms. Woolridge had "significantly more job-related experience than Plaintiff (approximately 15 years more)," and that Ms. Woolridge's position "requires a TS/SCI (Top Secret/Sensitive Compartmented Information) security clearance," while Plaintiff "did not have this requisite clearance or any level of similar security clearance," and that "[s]uch a clearance also lends itself to both higher job levels and compensation.").

BI&A's 5-category, 50-point rubric—for purposes of the challenged action here, the performance evaluations. BI&A SUMF ¶¶ 15–16, 18; ECF 37-2 at 8–10 (Plaintiff's response to BI&A SUMF ¶¶ 15–16, 18). It is also undisputed that, at the time the 2021 performance evaluations were issued, Plaintiff and Ms. Woolridge held different positions: Ms. Woolridge was a Contract Management Specialist - Level 5, Plaintiff was a Contracts Management Specialist – Level 4. Employees' "job titles alone are not dispositive on the question of being similarly situated," *Kande v. Dimensions Health Corp.*, No. GJH-18-2306, 2020 WL 7054771, at *13 (D. Md. Dec. 2, 2020); neither does "an equivalent pay grade alone . . . establish that a comparator is similarly situated." *High v. Commiss'r, Soc. Sec.*, No. SAG-18-3334, 2019 WL 5209613, at *7 (D. Md. Oct. 16, 2019). This Court notes, however, that Plaintiff's acknowledgment of the "differences in job level" between her and Ms. Woolridge certainly does not lend support to her attempt to show that the two were similarly situated. ECF 37-1 at 15.

Evidence regarding Plaintiff's and Ms. Woolridge's respective job responsibilities and assigned job tasks for the 2021 performance year is essential to the "similarly-situated" analysis. Unless Plaintiff can show that Ms. Woolridge had such similar responsibilities and assignments, the fact that Mr. Balsamo gave Ms. Woolridge a score of "7" for "Job Knowledge" while giving Plaintiff a score of "8" does not indicate discriminatory intent, because Ms. Woolridge could know the elements specific to *her job* nearly as well as Plaintiff knows those specific to *hers*.

Putting aside some dispute among the parties as to the extent and performance of *Plaintiff's* responsibilities in her Level 4 position, *see* BI&A SUMF ¶¶ 25–26; ECF 37-2 at 13–15 (Plaintiff's response to BI&A SUMF ¶¶ 25–26), the only evidence that could be perceived to speak to Plaintiff's assertions regarding Ms. Woolridge's "substantially similar duties" is a job description included within a requisition opened in October, 2019, for what Plaintiff characterizes as the

position for which Ms. Woolridge "originally applied." ECF 37-1 at 13; ECF 37-5. The record also includes, within BI&A's statement of facts, a job description for Plaintiff's Level 4 position (BI&A SUMF ¶ 24; ECF 37-2 at 12–13 (Plaintiff's response to BI&A SUMF ¶ 24)), though the description itself is not dated.[19] It is the case that, comparing these two job descriptions, they employ significant portions of nearly verbatim language. This is unsurprising considering that both descriptions were for a Level 4 position. However, this evidence is insufficient to establish Ms. Woolridge as a valid comparator with regards to the performance evaluations at issue. The advertised description of responsibilities, posted in 2019, for the Level 4 position for which Plaintiff asserts Ms. Woolridge *originally applied* is insufficient to demonstrate what Ms. Woolridge's responsibilities were in the position for which she was *actually hired*, and in which she was serving at the times relevant to the performance evaluations at issue—a Level 5 position. ECF 37-6 (Offer Letter to Ms. Woolridge, dated July 14, 2020); BI&A SUMF ¶ 16; ECF 37-2 at 9 (Plaintiff's response to BI&A SUMF ¶ 16); Pl. Aff. ¶ 15. Further, Plaintiff has effectively conceded that the job description contained in the October, 2019 requisition should not be considered as evidence of Ms. Woolridge's responsibilities as a Level 5 because Ms. Woolridge was not ultimately hired at the level advertised in the requisition. In Plaintiff's response to BI&A SUMF ¶ 15, in which BI&A stated that "Plaintiff was the only Contract Management Specialist – Level 4 who reported to Mr. Balsamo during the 2021 performance year," Plaintiff asserted that

---

[19] This job description was originally submitted as an exhibit to BI&A's motion to dismiss the amended complaint. ECF 21-2. BI&A asserted that this job description pertained to the "Contracts Management Specialist – Level 4" position, the title with which Plaintiff's position was reclassified on June 1, 2019. BI&A's statement of undisputed facts in its motion for summary judgment did not attest to the date upon which the job description was authored or issued; however, Plaintiff, in her opposition, reiterated her allegation from her amended complaint that "[o]n June 1, 2019, Plaintiff's position was reclassified as a Contract Management Specialist Level 4." ECF 37-1 at 3.

"*had* Ms. Woolridge been hired to the Level 4 Contracts Manager position which was posted, Mr. Balsamo would have had two Contract Management Specialist – Level 4 as subordinates." ECF 37-2 at 8–9 (emphasis added).

Plaintiff has adduced no evidence as to what Ms. Woolridge's responsibilities were in her Level 5 position. BI&A, through the declaration of Mr. Balsamo, has suggested that part of Ms. Woolridge's duties in that position pertained to a relationship with a particular client. *See* ECF 35-5 ¶ 3 ("Ms. Woolridge's higher salary was commensurate with her 30-plus years of extensive job-related experience, a high-level clearance, *and strong prior knowledge with this government customer to support her higher job level*.") (emphasis added). "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). Plaintiff has failed to meet this burden, and thus, has failed to establish her *prima facie* case.

Additionally, and importantly, after having evaluated each of the requisite elements for Plaintiff's *prima facie* case of disparate treatment on the basis of race or color, this Court reiterates the overarching inquiry that determines the success of Plaintiff's Title VII claims—namely, whether Plaintiff has shown that a reasonable jury could find by a preponderance of the evidence that Mr. Balsamo's *discriminatory animus* was a motivating factor in issuing the disputed performance review. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010) ("Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of discrimination *vel non*.") (internal quotation marks omitted); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) ("The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her.").

Even if this Court were to assume, *arguendo*, that Plaintiff had demonstrated that she and Ms. Woolridge were similarly situated, she has offered no evidence from which a reasonable factfinder could conclude that Mr. Balsamo treated Ms. Woolridge *more favorably* than Plaintiff in his evaluations of their performance, let alone that race or color discrimination was a motive for the respective evaluation scores. *See Fanord v. Washington Metro. Area Transit Auth.*, No. TDC-14-3973, 2017 WL 3887855, at *7 (D. Md. Sept. 5, 2017) ("Even if a similarly situated employee from outside the protected class were treated differently, [plaintiff] can point to no 'additional tie' to a religious or national-origin motive for that decision that would support a finding of discrimination.") (citing *Adams*, 640 F.3d at 559 ("[Plaintiff's] comparison of his qualifications to those of others in the Department cannot, by itself, meet his burden. There must be some additional tie to a religious motive for the decision not to promote him . . . .")). Rather, she merely asserts, in conclusory fashion, that Mr. Balsamo "gives his preferred employees higher grades than what is truly deserved," ECF 37-2 at 10 (Plaintiff's response to BI&A SUMF ¶ 18), and that he "grades his direct reports based on his likes and dislikes" Pl. Aff. ¶ 33. Particularly glaring in Plaintiff's offering at summary judgment is the absence of any deposition testimony from anyone at BI&A regarding the performance evaluations for 2021, most notably Mr. Balsamo, whom Plaintiff inexplicably argues she is she is entitled to cross-examine in front of a jury regarding the scores and their justification despite having declined to depose him during discovery. ECF 37-1 at 9.

In sum, this Court concludes that Plaintiff has failed to sufficiently establish her *prima facie* case of discrimination. Thus, it need not reach the latter steps of the *McDonnell-Douglas* analysis. BI&A's motion for summary judgment will be granted.

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment, by her own admission, is entirely "predicated on Defendant's Answer being deemed unsigned and struck, thus resulting in the facts alleged in Plaintiff's Amended Complaint being conceded by Defendant." ECF 37-1 at 7 n.2. Indeed, the majority of Plaintiff's motion for summary judgment appears dedicated to the argument—which this Court has already rejected, *supra*—that because BI&A's January, 2025 answer to Plaintiff's amended complaint was not signed in accordance with this Court's rules, it was invalid, and, consequently, BI&A has not filed a valid and timely answer and so has conceded "all of the facts asserted in [Plaintiff's] Amended Complaint." ECF 38-1 at 11 n.6; *id.* at 15 ("With no responsive pleading, all facts alleged in Plaintiff's Amended Complaint are deemed conceded and admitted by Defendant.") (citing Fed. R. Civ. P. (8)(b)(6)).

The "Summary of Facts" in Plaintiff's motion for summary judgment is made up entirely of procedural history and facts pertaining to Mr. Waddell and the signature issue, ECF 38-1 at 4–8, though she also includes a list of "Undisputed Material Facts" related to her claim that she asserts, as a result of what she has argued was "Defendant's unsigned Answer filed in violation of the Court's rules," were "conceded by Defendant." ECF 38-1 at 8. Plaintiff has put forward only seven exhibits in support of her motion.[20] Five of these are in support of her arguments regarding the signature requirement. ECF 38-2, 38-3, 38-4, 38-5, 38-6. Thus, for purposes of her summary

---

[20] As previously noted, Plaintiff did not file her motion for summary judgment and her opposition to BI&A's motion for summary judgment as a single memorandum (as required by Local Rule 105.2(c); rather, she filed two separate memoranda, with different sets of exhibits attached to them. As a consequence, in reviewing Plaintiff's own motion, this Court only considers those exhibits attached to that motion (though it notes that even if it were to consider the two memoranda as if they were part of the same memorandum, and thus consider the exhibits attached to each as if attached to both, this Court has already concluded that Plaintiff has not adduced sufficient evidence to prove a *prima facie* case of discrimination in her opposition to BI&A's motion).

judgment motion, Plaintiff's substantive disparate treatment claim rests entirely on the allegations in her amended complaint, coupled with (1) two screenshots of text messages with a co-worker, ECF 38-7, which Plaintiff cites for their discussion of Ms. Toth's experience; and (2) Plaintiff's "Affidavit." She argues that "[b]ecause all facts alleged in Plaintiff's Amended Complaint are deemed admitted, Plaintiff meets [her] burden" to establish a *prima facie* case of disparate treatment. ECF 38-1 at 16. As analyzed above, this Court rejects this procedural argument; thus, Plaintiff's motion for summary judgment will be denied.

## VI.    CONCLUSION

For the reasons stated above, BI&A's Motion for Summary Judgment, ECF 34, 35 will be granted, Plaintiff's Motion to Strike Deposition Transcript, ECF 36, will be denied, and Plaintiff's Motion for Summary Judgment, ECF 38, will be denied. Judgment will be entered in favor of BI&A. A separate Order of Judgment follows.


Dated: December 10, 2025                            _____/s/_____
                                                   Stephanie A. Gallagher
                                                   United States District Judge